**Lynn MARTIN, Secretary of Labor, United States Department of Labor, Plaintiff,**

**v.**

**W.E. MONKS & CO., a Corporation and Edgar Edwards, Defendants.**

No. C–2–87–977.

United States District Court, S.D. Ohio, E.D.

June 3, 1992.

Janice L. Thompson, U.S. Dept. of Labor, Cleveland, Ohio, for plaintiff.

Robert Hamilton Albert, Kagay, Albert & Diehl, Columbus, Ohio, for defendants.

## MEMORANDUM AND ORDER

HOLSCHUH, Chief Judge.

This matter is before the Court for its ruling after a four-day trial without a jury. Post-trial briefs have been submitted by both sides, as well as proposed findings of fact and conclusions of law.

## BACKGROUND

This action is brought by the Secretary of Labor under the Fair Labor Standards Act of 1938 as amended, 29 U.S.C. §§ 201, *et seq.*, for failure to pay employees for overtime worked in 1984–91. The defendants in this action are W.E. Monks & Co., a consulting engineering corporation, and its majority shareholder and president, Edgar Edwards.

After investigations in October 1986 and May 1991, the Secretary filed this action, charging that the defendants violated the Fair Labor Standards Act by failing to pay thirteen employees overtime at a rate of one and one-half times their normal rates of pay. The amount allegedly owed to W.E. Monks & Co. employees up to the date of the second investigation is $19,-517.14 and interest. The Secretary also seeks injunctive relief. Defendants contend that they owe no additional overtime pay because the employees fall into the professional employees' exemption from the Fair Labor Standards Act. The employees were compensated for overtime at their regular hourly rates of pay. Further, defendant Edgar Edwards maintains that he is not liable as an employer under the Act.

This action was filed on August 12, 1987. Trial was conducted by this Court on September 30, October 1, and November 12–13, 1991. The final post-trial memorandum was filed on March 10, 1992.

## LEGAL ANALYSIS

This action is brought under section 17 of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201, *et seq.* Relevant to this case is the FLSA's overtime provision, 29 U.S.C. § 207, which provides, in part,

Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). FLSA coverage of employers "includes any person acting directly or indirectly in the interest of an employer in relation to an employee...." 29 U.S.C. § 203(d).

## DEFENDANT EDWARDS' LIABILITY

The Secretary contends that the employer liable under the FLSA is W.E. Monks & Co. (Monks) and that the liability extends to Edgar Edwards by virtue of the fact that, together with Monks, he falls under the definition of "enterprise" under the Act. " 'Enterprise' means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose...." 29 U.S.C. § 203(r)(1). Defendant Edgar Edwards contends that he is an employee of Monks, not an employer through his acting as part of Monks' "enterprise."

Defendant Edwards is president and treasurer of Monks. He is the majority shareholder, holding seventy-five percent of Monks' stock. According to his own testimony, Edwards is Monks' principal owner and has the power to hire and fire employees. He sometimes assigns work and spends most of his time managing the business, meeting with clients, and nurturing his employees' careers. (Trial Transcript, Vol. IV, pp. 33–35.)

Whether an individual instrumental to the operation of an employing company may be held liable for violating the FLSA, along with the company, is at issue. Case law seems clear that a corporate officer and majority shareholder may be consid-

ered to be an employer under the Act, provided that individual exerts control over areas of management, particularly employee compensation or work situations. *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962 (6th Cir.1991) (corporate officer with operational control over the corporation was an "employer," jointly and severally liable with the corporation); *Donovan v. Grim Hotel Co.*, 747 F.2d 966 (5th Cir. 1984), *cert. denied*, 471 U.S. 1124, 105 S.Ct. 2654, 86 L.Ed.2d 272 (1985) (corporate founder who held purse strings, guided policies, and could authorize FLSA compliance was "employer"); and *Donovan v. Agnew*, 712 F.2d 1509 (1st Cir.1983) (individual with significant ownership interest and operational control over day to day aspects was "employer"). *See also Falk v. Brennan*, 414 U.S. 190, 94 S.Ct. 427, 38 L.Ed.2d 406 (1973) (expansive definition of "employer" under FLSA considers the extent of one's managerial responsibilities and control of working terms and conditions).

Determination of an individual's status as an employer depends upon the totality of the circumstances and consideration of the economic realities involved. *See Agnew, supra.* In the action before the Court, defendant Edwards testified as to his involvement in Monks' operation. He participates in assigning projects to specific engineers, trains engineers to some extent, hires and fires personnel, sometimes assigns wages, meets with clients, acts as a consultant, but does little design work personally. (Trial Transcript, Vol. III, p. 20; Vol. IV, pp. 34–36.) The Court finds that Edwards' involvement in Monks' policies and work situations, as well as his influence over the hiring, firing, and compensation of Monks employees, clearly establish that he qualifies as an employer under the FLSA. 29 U.S.C. § 203(d).

Case law points out that the determination of an individual as an "employer" addresses liability, while determination of an "enterprise" is made to invoke FLSA coverage. *See Falk, supra,* and *Patel v. Wargo,*

803 F.2d 632 (11th Cir.1986). The enterprise analysis' purpose under the FLSA was solely for "expanding the scope of coverage of the statute," *Patel*, 803 F.2d at 636. Such expansion might be necessary to establish a minimum dollar amount to trigger FLSA coverage. *Id.* The Secretary's attempt to characterize Edwards as part of an "enterprise" under the FLSA is unnecessary. Monks admits that the FLSA covers Monks' employees; Edwards' simultaneous role as an employer extends liability to him. In cases where "enterprise" is disputed, as those cited by the Secretary, separate entities are being connected as an enterprise, not a company with its major shareholder/corporate officer. In the case before the Court, Monks does not argue that the FLSA does not apply to its employees, albeit with the exemption of its professional employees. (Defendants' Post–Trial Brief, p. 8.) Edwards' joint liability by virtue of his managerial role is established by the "employer" analysis, as previously determined. Determination that Edwards and Monks are separate entities comprising an enterprise beyond the W.E. Monks & Co. corporation is an unnecessary application of the enterprise analysis.

## OVERTIME VIOLATIONS

The alleged violation at the heart of this action is improper overtime compensation of thirteen Monks employees, generating an overtime pay shortage of $19,517.14. The Secretary alleges that these draftsmen, designers, and engineers are paid regular hourly rates multiplied by their hours worked, not compensated at rates at least one and one-half times their regular rates for hours worked over eighty in a two-week pay period as required. 29 U.S.C. §§ 207 and 215(a)(2).[1]

During trial of this action, the Secretary produced witnesses, including Monks' employees and U.S. Department of Labor investigator Deborah Board, to establish that thirteen Monks' employees were deprived

---

1. The statute refers to work hours as forty per week. Monks pays its employees every two weeks.

of the full overtime compensation as provided in the FLSA. The former and current Monks' employees testified that they were never paid the statutory rate for overtime when they worked more than eighty hours in a two-week pay period. (Trial Transcript, Vol. I, pp. 22–27 and 55–57.) In fact, former Monks' employee Eugene Griffin stated that, after the initial Labor Department investigation in 1986, defendant Edwards told employees to record at least forty hours in each work week, even when they did not work forty hours, and then work more than forty hours the next work week to total an even eighty hours per pay period. Employees continued to be paid "straight time," not one and one-half their "straight time" rates, for overtime work. (Trial Transcript, Vol. I, pp. 24–26.)

Investigator Board testified that she reviewed payroll records, employee earnings records, and time sheets to determine the alleged violations. (*See* Joint Exhibits 1 and 2 and Plaintiff's Exhibits 6 and 7.) The employees who failed to receive adequate overtime compensation, according to the Secretary, are as follows: Richard Braddock ($40.80 due), Michael Geary ($5,128.64), Eugene Griffin ($3,672.48), Thomas Howard ($2,090.57), Adel Magaziner ($1,771.68), Laura Martino ($1,714.69), Todd Miller ($2,521.34), Todd Borton ($94.21), James Brooks ($680.57), Robert Garrity ($1,345.75), Daniel Grieshop ($354.18), George Lucas ($57.23), and Dan Milosevich ($45.00). *Id.*

That the above-named employees worked more than eighty hours in certain eighty-hour pay periods and that they were compensated at their regular rates instead of one and one-half times those rates is evident from the pay records included as exhibits in this trial. The defendants do not dispute that the employees sometimes worked more than eighty hours in certain pay periods and that these employees were compensated for the extra hours at their regular rate. (Trial Transcript, Vol. IV, pp. 29–30.) The Court thereby finds that the defendants did not compensate these employees at one and one-half times their regular pay rates.

In response to charges of overtime violations for the thirteen employees, however, defendants contend that the employees involved are exempt from FLSA regulations because they qualify as professionals. The professional exemption is found at 29 U.S.C. § 213, which states, in part, as follows: "(a) The provisions of section 206 ... and section 207 of this title shall not apply with respect to—(1) any employee employed in a bona fide executive, administrative, or professional capacity...."

The statute does not provide the qualifications necessary for an employee to be considered a "professional." Those requirements are found at 29 C.F.R. §§ 541, *et seq.*

The term "employee employed in a bona fide ... professional capacity" in section 13(a)(1) of the Act shall mean any employee:

(a) Whose primary duty consists of the performance of:

(1) Work requiring knowledge of an advance type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study, as distinguished from a general academic education and from an apprenticeship, and from training in the performance of routine mental, manual, or physical processes.... (and)

(b) Whose work requires the consistent exercise of discretion and judgment in its performance; and

(c) Whose work is predominantly intellectual and varied in character (as opposed to routine mental, manual, mechanical, or physical work) and is of such character that the output produced or the result accomplished cannot be standardized in relation to a given period of time; and

(d) Who does not devote more than 20 percent of his hours worked in the workweek to activities which are not an essential part of and necessarily incident to the work described in paragraphs (a) through (c) of this section; and

(e) Who is compensated for services on a salary or fee basis at a rate of not less than $170 per week ... exclusive of board, lodging, or other facilities....

*Provided further,* That an employee who is compensated on a salary or fee basis at a rate of not less than $250 per week ... exclusive of board, lodging, or other facilities, and whose primary duty consists of the performance either of work described in paragraph (a)(1) or (3) of this section, which includes work requiring the consistent exercise of discretion and judgment, or of work requiring invention, imagination, or talent in a recognized field of artistic endeavor, shall be deemed to meet all of the requirements of this section.

29 C.F.R. §§ 541.3. The employer has the burden of proving that the professional exemption applies.

 The above proviso, as elaborated upon in 29 C.F.R. § 541.315, allows an employee who is compensated on the above salary or fee basis to be deemed as having met the requirements for exemption in section 541.3(a)-(e), provided that employee is employed in one of the "learned" professions or in an "artistic" profession and doing primarily professional work.[2] This proviso has become known as the "streamline" test for professional exemption. *See Paul v. Petroleum Equipment Tools Co.,* 708 F.2d 168 (5th Cir.), *rehrg. denied,* 714 F.2d 137 (1983); and *Jackson County Assistant Prosecutors Ass'n v. Jackson County,* 1991 WL 438282, 1991 U.S. Dist. LEXIS 2789 (E.D.Mich.1991). According to the rates used by the Secretary in calculating the overtime compensation shortages, each of the thirteen employees was earning at least $250 weekly. (*See* Joint Exhibit 1 and Plaintiff's Exhibit 6.) The streamlined analysis would seem to apply.

However, at the onset of the analysis the FLSA is clear that a professional employee must be compensated on a salary or a fee basis, not hourly. 29 C.F.R. §§ 541.311(a) and 541.313. "Payments based on the number of hours or days worked and not on the accomplishment of a given single task are not considered payments on a fee basis." 29 C.F.R. § 541.313(b).

The requirements of the compensation of professional employees by the salary method are the same as those for executive employees. 29 C.F.R. § 541.312. Those requirements are found at section 541.118:

(a) An employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked. This policy is also subject to the general rule that an employee need not be paid for any workweek in which he performs no work.

. . . .

(2) Deductions may be made, however, when the employee absents himself from work for a day or more for personal reasons, other than sickness or accident. Thus, if an employee is absent for a day or longer to handle personal affairs, his salaried status will not be affected if deductions are made from his salary for such absences.

(3) Deductions may also be made for absences of a day or more occasioned by sickness or disability (including industrial accidents) if the deduction is made in accordance with a bona fide plan, policy or practice of providing compensation for loss of salary occasioned by both sickness and disability. Thus, if

---

**2.** Such an employee's primary duty must consist of performing work requiring knowledge of an advanced type in a field of science or learning or work as a teacher, which includes work requiring the consistent exercise of discretion and judgment, or work requiring invention, imagination, or talent in a recognized field of artistic endeavor.

the employer's particular plan, policy or practice provides compensation for such absences, deductions for absences of a day or longer because of sickness or disability may be made before an employee has qualified under such plan, policy or practice, and after he has exhausted his leave allowance thereunder. It is not required that the employee be paid any portion of his salary for such days or days for which he receives compensation for leave under such plan, policy or practice....

In the case before the Court, the Secretary alleges that defendants' employees were not paid on a salary basis, as they were paid hourly and received less than the regular daily compensation amount if they worked less than a day. (Plaintiff's Post-Trial Brief, p. 11.) The defendants counter that the thirteen employees at issue were paid salaries and only recorded work on an hourly basis for client billing, not for payroll purposes.

Evidence shows that the employees' billable work rates were based upon an annual compensation figure, what each would receive if he or she worked full-time, forty hours per week. (Trial Transcript, Vol. III, p. 59; Vol. IV, pp. 21, 23–25, 88.) However, testimony clearly shows that employees were never guaranteed that annual amount, barring absences of one day or more. (Trial Transcript, Vol. I, pp. 16, 65.) In fact, on certain occasions, employees worked fewer than forty hours in a week and received less than a full period's pay, even if those absences were for less than one day. In short, employees might have been led to believe they would receive a certain salary amount but were not guaranteed that amount and often did not receive that amount, regardless of absences allowed under the FLSA.

In fact, in an apparent attempt to compensate employees with a "regular" amount, defendant Edwards instructed employees to declare that they worked forty hours in a week on their time sheets, regardless of their actual hours worked, to receive their allotted amount in pay. (Trial Transcript, Vol. IV, p. 81.) However, they were told to "make up" the following week any hours that they had actually worked below forty the previous week, thereby working more than forty hours during that second week. (Trial Transcript, Vol. I, pp. 24–27. *See also* Trial Transcript, Vol. IV, pp. 123–124, 127, 135, 142–43.) Employees were paid for these extra hours at their hourly rates. Employees were paid less for days in which they worked less than the full day. (Trial Transcript, Vol. I, pp. 16–27, 65–74; Vol. IV, pp. 122, 142–145.) This reduction is in direct opposition to the regulation's requirements for salary compensation. At other times, employees were instructed to assign part-day absences to vacation or sick leave time. *Id.*, pp. 122–145.

The defendants rely upon *Fire Fighters Local 2141 v. City of Alexandria*, 720 F.Supp. 1230 (E.D.Va.1989), *aff'd*, 912 F.2d 463 (4th Cir.1990), as supporting their argument that salary status is not lost when absences of less than a day result in occasional pay deductions. However, in drawing such a conclusion in that case, the district court qualified it by the statement that it applies "when [the employee] regularly receives a predetermined amount constituting all or part of his compensation." *Id.* at 1232. The court continued, "While personal leave, sick leave and/or compensatory time may be part of an employee's compensation package, it does not constitute salary." *Id.*

In *Fire Fighters Local 2141*, the city successfully utilized the next argument that Monks attempts. That is, the defendants contend that, even if the employees are found to be hourly employees who have been compensated at a regular, impermissible overtime rate, the defendants should be allowed to take advantage of the "window of correction" afforded by 29 C.F.R. § 541.-118(a)(6). "[W]here a deduction not permitted by these interpretations is inadvertent, or is made for reasons other than a lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future." *Id.*

■ As the Secretary points out, the "window of correction" only applies when

the employees otherwise have been determined to be professional employees and when pay deductions were inadvertent. In *Fire Fighters Local 2141*, the city had already revised its policy, identified and reimbursed affected employees, correctly utilizing the "window of correction." Although defendants represent that their employees will be properly compensated to remedy past shortfalls, evidence has shown that the employees were not paid on a salary basis but on an hourly basis. This payment was made by a method hinging upon the number of hours worked and not by any inadvertent deductions from a regular pay amount. The defendants' pay policy continues to correlate the employees' pay amount to the hours the employees worked. Whether Monks intended to pay an annual amount or not, employees did not necessarily receive it. When they did, that amount likely was earned by working some overtime hours in particular weeks. There was no inadvertence in this method and the employees were not salaried. The "window of correction" is therefore inapplicable in the case before the Court. *See Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611 (2d Cir.1991), attached to Plaintiff's Post–Trial Brief.

The Court thereby finds that, under the compensation methods demonstrated at trial, defendants' thirteen current and former employees were compensated as hourly employees, regardless of whether they otherwise qualified as professional employees. Under this method of payment defendants are not entitled to claim the professional exemption for the thirteen employees for whom the Secretary claims overtime wages are due. The Court does not decide whether the thirteen employees, had they truly received compensation on a salary or fee basis, would meet the other requirements as professional employees.

## CONCLUSION

For the foregoing reasons, the Court finds for the plaintiff Secretary of Labor and orders the defendants to comply with the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*, and to compensate the thirteen employees in this action for owed overtime wage in the amount of $19,517.14. The plaintiff is also granted injunctive relief and the defendants are to comply with the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*

IT IS SO ORDERED.