19 F.3d 1126
 128 Lab.Cas. P 33,088, 1 Wage & Hour Cas. 2d
(BNA) 1638
 Robert FEGLEY, Plaintiff-Appellant, Cross-Appellee,
v.
Ronald B. HIGGINS, Sr.; C.M.R.A. Incorporated; CMR
Associates; Cynthia Higgins; Ronald Higgins,
Jr.; Marcy Pakizer, Defendants-Appellees,
Foremost Industries, Inc., Defendant-Appellee, Cross-Appellant.
 Nos. 92-1771, 92-2086 and 92-2164.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 10, 1993.
Decided April 26, 1994.
 
 Michael A. Alaimo (briefed), Theodore R. Opperwall (argued), Dickinson, Wright, Moon, Van Dusen & Freeman, Detroit, MI, for plaintiff-appellant, cross-appellee.
 Ralph Musilli (argued and briefed), Musilli & Baumgardner, Theresa K. Klimczuk, Klimczuk & Paruszkiewicz, St. Clair Shores, MI, for Ronald B. Higgins, Sr., C.M.R.A., Inc., CMR Associates, Cynthia Higgins, Ronald Higgins, Jr., Marcy Pakizer.
 Ralph Musilli, Elizabeth S. Lopez, Musilli & Baumgardner, St. Clair Shores, MI, for Foremost Industries, Inc.
 Before: JONES, Circuit Judge; BROWN, Senior Circuit Judge; and WEBER, District Judge.*
 BAILEY BROWN, Senior Circuit Judge.
 
 
 1
 Plaintiff Robert Fegley ("Fegley") and defendant Foremost Industries, Inc. ("Foremost") appeal the final judgment of the district court in this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. Sec. 201 et seq., which awarded plaintiff overtime and attorney fees against Foremost and dismissed Fegley's additional claims and the remaining defendants. We affirm in part, and reverse and remand in part.
 
 I.
 
 2
 Fegley seeks to collect unpaid wages, overtime, and attorney fees under the FLSA. The district judge granted Fegley's motion for partial summary judgment as to liability and allowed the case to go to trial to determine damages only. Fegley v. Higgins, 760 F.Supp. 617 (E.D.Mich.1991). At the bench trial to determine damages, the judge made the following findings of fact and conclusions of law:1. CMR [Associates, a partnership which was incorporated as CMRA, Inc. in June 1988] and Foremost were in the business of fabricating automotive prototype metal parts during the relevant periods in 1988 and 1989. Ronald B. Higgins, Sr. (Higgins), and members of his family [son Ronald Higgins, Jr.; wife Cynthia Higgins; and daughter Marcy Pakizer] were the partners of CMR and the stockholders of Foremost.[1] Higgins was manager of CMR and chief executive officer of Foremost. CMR was in business between January and April 1988. Thereafter Foremost continued the business.
 
 
 3
 2. Prototype parts are fabricated by skilled metal model makers. Manufacturers of automotive parts contract for prototype parts to assess the design of new parts and to make the necessary dies and the like for such new parts.
 
 
 4
 3. Higgins and Fegley had experience in the fabrication of prototype parts. Higgins had the experience and the relationships necessary to obtain contracts. Fegley was a skilled metal model maker. In late 1987, Higgins and Fegley discussed going into business together. Each was to own one-half of the business. The discussions were general and continued intermittently through April 1988. No agreement was reached because Fegley lacked the necessary funds to contribute to the capital of the proposed business.
 
 
 5
 4. Beginning around January 1, 1988, Higgins obtained several contracts for the fabrication of prototype parts. Fegley agreed to work on the fabrication of these parts knowing that Higgins had no money with which to pay him. Fegley was satisfied to work without pay, believing at the time that he would eventually go into business with Higgins. Fegley and Higgins agreed that if they did not get together in business then Higgins would pay Fegley for his work. No amount was agreed upon. Fegley was required to work no particular hours.
 
 
 6
 5. Fegley worked intermittently between January and March 1988 on the premises of Westco Metal Craft Co., where Higgins had rented space and facilities. Higgins paid Fegley $1,150 in March 1988, which the parties initially considered a loan. Higgins eventually treated it as compensation and so advised Fegley. Higgins also gave Fegley a set of tires during the period. The tires had a value of $400.
 
 
 7
 6. Between January and April 1988, Fegley was an incipient partner of Higgins. He anticipated that a business relationship with Higgins would develop. While the Court has previously found that Fegley was an employee of CMR,[2] that finding is not sufficient to find that any money is owed Fegley for the work he did during that period. The Court cannot extrapolate from the contracts Fegley worked on, his statements and casual observations of third-parties the hours worked and particularly whether Fegley worked more than forty hours in any particular week.
 
 
 8
 7. In early 1988, Foremost acquired premises in New Baltimore and Higgins began contracting work to be performed on these premises by Foremost. Fegley assisted Higgins in setting up the new premises for fabricating operations.
 
 
 9
 8. Early in April 1988, Higgins and Fegley agreed that Fegley would go to work full time in the New Baltimore premises as shop foreman for $750 a week. Fegley was first paid for the week ending May 15, 1988 and worked regularly until [Higgins discharged him on] April 1, 1989.
 
 
 10
 9. The regular work week at New Baltimore ran from Monday to Saturday and covered 56 hours with work on Monday through Thursday from 6:00 a.m. to 4:30 p.m. and Friday and Saturdy [sic] from 8:00 a.m. to 4:00 p.m. Fegley was aware of this when he agreed to the $750.00 per week and generally worked these hours each of the 44 weeks between May 15, 1988 and April 1, 1989. No record was kept of the hours Fegley worked.
 
 
 11
 10. Fegley and Higgins did not discuss overtime. Since Fegley knew the work week was 56 hours and agreed to $750 a week as his compensation, his hourly pay was $13.70 an hour. See Brennan v. Valley Towing Co., Inc., 515 F.2d 100, 109 n. 13 (9th Cir.1975). The Court rejects the reasoning of Marhsall [sic] v. Hendersonville Bowling Center, Inc., 483 F.Supp. 510 (M.D.Tenn.1980) [, aff'd, 672 F.2d 917 (6th Cir.1981) ].
 
 
 12
 11. The only credible evidence regarding the hours Fegley worked is the detailed hours Richert and Roberts worked since Fegley's working hours closely paralleled their working hours. During the forty-four weeks in which Fegley, Richert and Roberts worked in common, Richert worked 644 hours of overtime exclusive of Sundays and Roberts worked 573 hours of overtime exclusive of Sundays. Fegley did not work Sundays.
 
 
 13
 12. The best approximation, which is all that can reasonably be found, of Fegley's overtime hours is determined by averaging the hours of Richert and Roberts. This approximation is 600 hours. Fegley was entitled to an hourly rate for these hours of $20.10. Since he was paid only $13.70 an hour, he is entitled to $6.40 an hour or $3,840 for overtime pay.
 
 
 14
 13. Foremost's failure to pay Fegley overtime was willful. Foremost made no effort to determine its responsibilities with regard to Fegley. See Dalheim v. KDFW-TV, 712 F.Supp. 533 (N.D.Tex.1989). Fegley is entitled to $3,840 in liquidated damages as a consequence.
 
 Opinion and Order of May 14, 1992.[3]
 
 15
 To clarify, three distinct time periods are involved in this lawsuit. During the first period from January 1 to April 11, 1988, Fegley contends he worked for CMR Associates under the direction of Ronald B. Higgins, Sr. ("Higgins"). The trial judge awarded no damages for this first period. On appeal, Fegley claims that he was entitled to damages for wages and overtime against Higgins and the three partners of CMR Associates.
 
 
 16
 During the second period from April 11 to May 15, 1988, Fegley contends he labored for Foremost, again under the direction of Higgins, but did not receive any wages. The trial judge awarded no damages to Fegley for the second period. Fegley avers that he is entitled to judgment against Foremost and Higgins for his work.
 
 
 17
 Finally, during the third period from May 15, 1988 to April 1, 1989, Fegley, without dispute, worked for Foremost and received wages of $750 per week. The trial court found Foremost solely liable for $7,680 in overtime and liquidated damages for this period. Neither party appeals the amount of this award, but Fegley contends that Higgins should be jointly liable with Foremost for the damages.
 
 
 18
 In addition to the award of $7,680 in damages, the judge later awarded Fegley $40,000 in attorney fees and denied the defendants' request for attorney fees. Foremost has appealed the award of attorney fees, and Fegley has cross-appealed.
 
 II.
 
 19
 Thus, on appeal, the parties have raised the following issues:
 
 
 20
 1. Whether the district court erred in completely dismissing defendants Ronald Higgins, Sr.; Ronald Higgins, Jr.; Cynthia Higgins; and Marcy Pakizer.
 
 
 21
 2. Whether the district court erred in refusing to assess damages against Higgins and the partners of CMR Associates for the period from January 1 to April 11, 1988.
 
 
 22
 3. Whether the district court erred in failing to award damages to Fegley against Foremost and Higgins for the period from April 11 to May 15, 1988.
 
 
 23
 4. Whether the district court erred in failing to hold Higgins jointly liable with Foremost for overtime for the period from May 15, 1988 to April 1, 1989.
 
 
 24
 5. Whether the district court erred in determining Fegley was a prevailing party entitled to attorney fees where the damages award was less than defendants' offers to settle prior to trial; whether the court erred in failing to make all of the defendants liable for the award of attorney fees; and whether defendants are entitled to attorney fees.
 
 III.
 
 25
 Whether the district court erred in completely dismissing defendants Ronald Higgins, Sr.; Ronald Higgins, Jr.; Cynthia Higgins; and Marcy Pakizer.
 
 
 26
 In awarding damages to Fegley against Foremost for the period from May 15, 1988 to April 1, 1989, the district court dismissed all of the defendants except Foremost without explaining its rationale. Fegley argues that Higgins, as well as Foremost, should be liable for any judgment for all three time periods because Higgins set up CMR Associates and Foremost, made the operational decisions for both, and was the president and the only member of the board of directors for Foremost. Further, Fegley contends that Ronald Higgins, Jr., Cynthia Higgins, and Marcy Pakizer should be jointly liable for any damages for the first period, from January 1 through April 11, 1988, since they were partners of CMR Associates. We agree.
 
 
 27
 We first consider Higgins. In its first order, the district court had stated:
 
 
 28
 Where a single person controls and guides several business entities, and where that person is the only one who can authorize compliance with the FLSA, the individual is subject to joint and several liability. Here, there can be no doubt that CMR, CMRA, and Foremost are all creatures of Higgins, subject almost entirely to his control. Accordingly, summary judgment on the issue of liability under the FLSA is also GRANTED against Higgins.
 
 
 29
 Fegley, 760 F.Supp. at 623 (citation omitted).
 
 
 30
 Under 29 U.S.C. Sec. 203(d), the FLSA defines an "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." See Dole v. Elliott Travel & Tours, Inc., 942 F.2d 962, 965 (6th Cir.1991).[4] We have noted that more than one "employer" can be simultaneously responsible for FLSA obligations. Id. The court determines as a matter of law whether a party is an employer using an "economic reality" test. Id. " 'The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.' " Id. (quoting Donovan v. Agnew, 712 F.2d 1509, 1511 (1st Cir.1983)).
 
 
 31
 Dole is directly on point to the case at hand. In Dole, we determined that an individual who was chief corporate officer, had a significant ownership interest in the corporation, and controlled significant day-to-day functions of the business, including determining salaries, was personally liable under the FLSA. Id. at 966. Similarly, Higgins was chief executive officer of Foremost, had a significant ownership interest in it, controlled significant functions of the business, and determined salaries and made hiring decisions. Higgins played an equally significant role in running the business of CMR Associates from January through April 1988. He acted as its manager and obtained contracts to make prototype parts. Thus, the district judge clearly erred in determining that Higgins was not liable on the judgment. Higgins will be held jointly liable for all damages assessed upon remand.
 
 
 32
 We next consider the dismissal of the partners of CMR Associates. Under Michigan law, partners are jointly liable for the debts of the partnership. Mich.Comp.Laws Sec. 449.15; Mich.Stat.Ann. Sec. 20.15; e.g., Lobato v. Paulino, 304 Mich. 668, 8 N.W.2d 873, 876 (1943). We therefore find that Ronald Higgins, Jr., Cynthia Higgins, and Marcy Pakizer are jointly liable for Fegley's damages for the period from January 1 to April 11, 1988 because they were partners of CMR Associates.
 
 IV.
 
 33
 Whether the district court erred in refusing to assess damages against Higgins and the partners of CMR Associates for the period from January 1 to April 11, 1988.
 
 
 34
 The district court found Fegley to be an "incipient partner" to Higgins during the period in question. It also found insufficient evidence of the hours Fegley had worked during that time. Fegley argues that the law does not recognize the concept of "incipient partnership," and that there was sufficient evidence upon which to calculate the back wages owed to him for the period. Fegley further asserts that it is undisputed that he and Higgins never became partners because he never met Higgins' condition of contributing some $65,000 of capital. In addition, Fegley never shared in profits or management of the businesses. Regarding the sufficiency of the evidence issue, Fegley notes that Higgins and the partnership kept no records of his work from January 1 through April 11, and that he testified extensively as to his schedule and hours.
 
 
 35
 A. The Relationship Between Fegley and Higgins
 
 
 36
 The FLSA is designed to be "a broadly remedial and humanitarian statute." Dunlop v. Carriage Carpet Co., 548 F.2d 139, 143 (6th Cir.1977). We thus "construe[ ] the Act's definitions liberally to effectuate the broad policies and intentions of Congress." Id. at 144.
 
 
 37
 Under the FLSA, an "employee" is "any individual employed by an employer."[5] 29 U.S.C. Sec. 203(e)(1). Further, to "employ" is "to suffer or permit to work." 29 U.S.C. Sec. 203(g). Whether a particular situation is an employment relationship is a question of law. Donovan v. Brandel, 736 F.2d 1114, 1116 (6th Cir.1984). Therefore, we review de novo the trial court's ruling that Fegley was an "incipient partner."
 
 
 38
 We have noted that where a partnership agreement is executory, "[i]n order to transform it into an executed one, and thus call the partnership into being, it was necessary that the parties do the things that they agreed to do." Commissioner of Internal Revenue v. Olds, 60 F.2d 252, 254 (6th Cir.1932). Partnership agreements are created by implied or express contract. Id. Here the parties had agreed that Fegley was to contribute approximately $65,000 to the proposed business. Indeed, the trial court stated in its second order that "[n]o agreement was reached because Fegley lacked the necessary funds." Since Fegley and Higgins did not "do the things that they agreed to do" to form the proposed business, we find that the court erred in determining that Fegley was a partner. Fegley was an employee.[6]
 
 B. Sufficiency of the Evidence
 
 39
 The trial court declared it could not "extrapolate from the contracts Fegley worked on, his statements and casual observations of third-parties the hours worked and particularly whether Fegley worked more than forty hours in any particular week." We find that the court placed too heavy of a burden of proof on the plaintiff.
 
 
 40
 Addressing the burden of proof for an employee suing for unpaid overtime or wages under the FLSA, the Supreme Court has held:
 
 
 41
 [W]here the employer's records [of work hours] are inaccurate or inadequate and the employee cannot offer convincing substitutes .... we hold that an employee has carried out his burden if he proves he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.
 
 
 42
 Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946), superseded by statute on other grounds as stated in Carter v. Panama Canal Co., 463 F.2d 1289, 1293 (D.C.Cir.), cert. denied, 409 U.S. 1012, 93 S.Ct. 441, 34 L.Ed.2d 306 (1972); see Shultz v. Tarheel Coals, Inc., 417 F.2d 583, 584 (6th Cir.1969) (where employees presented evidence of work for which they were improperly compensated, burden shifted to employer " 'to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the ... evidence.' " (quoting Mt. Clemens )). In Mt. Clemens, the Supreme Court noted that it is the employer who has the responsibility of keeping records of hours under the FLSA. 328 U.S. at 687, 66 S.Ct. at 1192.
 
 
 43
 We find the trial court did not use the proper Mt. Clemens standard regarding Fegley's burden of showing the hours he worked from January to April 1988. Defendant Higgins himself testified, for example, that during the period from January to April 1988, at times Fegley worked six or seven days a week, and may have stayed at work some days as late as eight p.m.[7] Joint App. at 1019-1020. Under Mt. Clemens, then, Fegley had produced enough evidence of his work to shift the burden back to Higgins to show the exact amount of work Fegley performed, or to disprove the amount of work performed.[8] Since we determine that Fegley was an employee, we remand to enable the district court to determine Fegley's damages, in accord with Mt. Clemens, for the period from January 1 to April 11, 1988. As discussed supra, Higgins and the partners of CMR Associates will be jointly liable for these damages.
 
 V.
 
 44
 Whether the district court erred in failing to award damages to Fegley against Foremost and Higgins for the period from April 11 to May 15, 1988.
 
 
 45
 Fegley claims Higgins admitted that Fegley began working at the New Baltimore shop on April 11, 1988 when Foremost began operations, and was not paid for the work prior to May 15, 1988, after which time he was paid $750 per week until his termination in 1989. Foremost responds that Fegley presented "no credible evidence to the hours he worked during that time period."Higgins' counsel, however, admitted during his opening statement that Higgins owed Fegley for this period:
 
 
 46
 THE COURT: First Half of April?
 
 
 47
 MR. MUSILLI: No work.
 
 
 48
 THE COURT: Second half?
 
 
 49
 MR. MUSILLI: Work.
 
 
 50
 THE COURT: And that was compensated?
 
 
 51
 MR. MUSILLI: No. That was not compensated. The second half of April was not compensated and the first half of May was not compensated.
 
 
 52
 THE COURT: So you still owe him for that?
 
 
 53
 MR. MUSILLI: Absolutely.
 
 
 54
 THE COURT: Okay.
 
 
 55
 MR. MUSILLI: Absolutely. And for the type of work that was being done comparable workers were paid anywhere from $8.75 an hour to $13.75 an hour.
 
 
 56
 Joint App. at 869 (emphasis added).
 
 
 57
 In discussing the work at Foremost, after it opened for business April 11, 1988, Higgins admitted that "Mr. Fegley started working full time about the same time I did." Higgins stated, "[t]he week of the 18th [of April] I think we [Higgins and Fegley] were there almost all the time during the regular work day"; during several of those weeks Higgins worked "at least 56 hours." Joint App. at 1083-1085.
 
 
 58
 Given these admissions by Higgins and his attorney, the trial court clearly erred in refusing to award unpaid wages to Fegley for the period from April 11, 1988 to May 15, 1988 (five weeks). We thus remand for a determination of the appropriate damages to be assessed against Higgins and Foremost.
 
 VI.
 
 59
 Whether the district court erred in failing to hold Higgins jointly liable with Foremost for overtime for the period from May 15, 1988 to April 1, 1989.
 
 
 60
 Upon remand, the trial court will hold Higgins jointly liable for the $7,680 awarded to Fegley against Foremost for this period. See supra Part III.
 
 VII.
 
 61
 Whether the district court erred in determining Fegley was a prevailing party entitled to attorney fees where the award was less than defendants' offers to settle prior to trial; whether the court erred in failing to make all of the defendants liable for the award of attorney fees to the plaintiff; and whether the defendants are entitled to attorney fees.
 
 
 62
 Professing that the district court erred in awarding Fegley attorney fees, the defendants assert the trial court failed to consider their settlement offers to Fegley, and that since Fegley recovered less at trial than the amount of such offers, Fegley cannot recover attorney fees or costs from the date the offer was made. Defendants also aver that Fegley is not a prevailing party. Further, defendants maintain the award of $40,000 in attorney fees is not reasonable considering the "nominal" damages awarded to Fegley. Fegley contends the award was reasonable and should be affirmed.
 
 
 63
 An award of attorney fees to a prevailing plaintiff under Sec. 16(b) of the FLSA is mandatory, but the amount of the award is within the discretion of the judge. United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co., 732 F.2d 495, 501 (6th Cir.1984). We thus determine "whether the lower court abused that discretion by awarding an unreasonable fee." Id. Since the FLSA does not discuss what constitutes a reasonable fee, "[t]he determination of a reasonable fee must be reached through an evaluation of a myriad of factors, all within the knowledge of the trial court, examined in light of the congressional policy underlying the substantive portions of the statute providing for the award of fees." Id.
 
 
 64
 The purpose of the FLSA attorney fees provision is "to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances." Id. at 502. Courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees here "encourage[s] the vindication of congressionally identified policies and rights." Id. at 503. Indeed, we have "upheld substantial awards of attorney's fees even though a plaintiff recovered only nominal damages." Posner v. The Showroom, Inc., 762 F.2d 1010, 1985 WL 13108 at * 2 (6th Cir.1985) (unpublished).
 
 
 65
 Under Fed.R.Civ.P. 68, however, entitled "Offer of Judgment," "[i]f the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after making the offer." In Marek v. Chesny, 473 U.S. 1, 9, 105 S.Ct. 3012, 3016, 87 L.Ed.2d 1 (1985), a Sec. 1983 and Sec. 1988 case, the Supreme Court held that where the plaintiff recovered less than the defendant's Rule 68 offer, the plaintiff could not recover attorney fees after that offer if "the underlying statute defines 'costs' to include attorney's fees." Since Rule 68 does not define "costs," "it incorporates the definition of costs that otherwise applies to the case." Id. at 9 n. 2, 105 S.Ct. at 3017 n. 2.
 
 
 66
 Under Sec. 1988, "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." (emphasis added). However, the FLSA does not include the award of attorney fees as costs; rather, "attorney's fee" and "the costs of the action" are expressly separate items under Sec. 216(b):[9]
 
 
 67
 The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.
 
 
 68
 Therefore, a Rule 68 offer does not affect the trial court's award of attorney fees under Sec. 216(b). See Marek, 473 U.S. at 13, 43-44, 105 S.Ct. at 3018, 3034 (Brennan, J., dissenting) (noting that for "[s]tatutes that do not refer to attorney's fees as part of the costs [such as Sec. 216(b) of the FLSA, 473 U.S. at 50, 105 S.Ct. at 3037] .... where an action otherwise is governed by Rule 68, attorney's fees that are potentially awardable under these statutes are not subject to Rule 68 and instead are to be evaluated solely under the reasonableness standard....").
 
 
 69
 Turning to the amount of the award, we cannot say the district court abused its discretion in awarding $40,000 in attorney fees to Fegley. We note that this lawsuit furthers the objectives of the FLSA by penalizing an employer who neglected to pay an employee overtime or to even maintain any records of his hours worked; it therefore encourages employer adherence to the mandates of the FLSA in the future.
 
 
 70
 Defendants further claim they are entitled to attorney fees. Under Sec. 216(b), however, "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." (emphasis added). This section does not provide for plaintiffs to pay attorney fees to defendants; under the plain language of the statute, defendants' argument is meritless.
 
 
 71
 Considering the fact that Fegley's attorney has expended additional effort upon this appeal, we leave it to the discretion of the district court as to whether to increase the previous award of $40,000 in attorney fees. Foremost Inc., Higgins, Ronald Higgins, Jr., Cynthia Higgins, and Marcy Pakizer will all be held liable for the attorney fees, to be assessed in proportions determined by the district court in its discretion.
 
 VIII.
 
 72
 We AFFIRM in part and REVERSE in part. We AFFIRM the district judge's award of attorney fees to Fegley. However, the district judge may increase this award upon remand and will determine what percentage of the award for which each defendant is responsible.
 
 
 73
 We REVERSE the district court's refusal to assess damages for the period from January 1 to April 11, 1988, and REMAND for a determination of the amount of damages. We REVERSE the district court's determination that Fegley was not entitled to damages for the period from April 11 to May 15, 1988, and REMAND solely for calculation of appropriate damages. Moreover, we REVERSE the dismissals of defendants Ronald Higgins, Sr., Cynthia Higgins, Ronald Higgins Jr., and Nancy Pakizer. The net result is that these four defendants will be jointly liable for Fegley's damages for the period from January 1 to April 11, 1988; and Higgins and Foremost will be jointly liable for Fegley's damages for the periods from April 11 to May 15, 1988 and from May 15, 1988 to April 1, 1989.
 
 
 
 *
 The Honorable Herman J. Weber, United States District Judge for the Southern District of Ohio, sitting by designation
 
 
 [1]
 The trial judge was inconsistent on whether Higgins was a partner of CMR Associates. See 760 F.Supp. at 619. It appears to us, however, that Higgins, although the driving force behind CMR Associates, was not actually a partner of it. In any event, Fegley does not here contend that Higgins was a partner, but does contend that Higgins was liable for his claims for damages
 
 
 [2]
 In its earlier Memorandum and Order of March 1, 1991, granting summary judgment as to liability, the court had determined that Fegley was an employee of CMR. Fegley, 760 F.Supp. at 622. In this later unpublished opinion, however, the court noted that "the findings which follow are not altogether consistent with the facts as described in the Memorandum and Order."
 
 
 [3]
 We note that while working for CMR, Fegley collected unemployment compensation. He later returned $5809 in improperly paid unemployment compensation to the Michigan Employment Security Commission
 
 
 [4]
 See also Martin v. W.E. Monks & Co., 805 F.Supp. 500 (S.D.Ohio 1992) (holding majority shareholder who had influence over hiring, firing, and compensation of employees; sometimes assigned work; and spent most of his time managing the business, clearly qualified as "employer" under the FLSA), aff'd, 1 F.3d 1241 (6th Cir.1993) (unpublished)
 
 
 [5]
 Senator (later Justice) Black described this as " 'the broadest definition that has ever been included in any one act.' " United States v. Rosenwasser, 323 U.S. 360, 363 n. 3, 65 S.Ct. 295, 296 n. 3, 89 L.Ed. 301 (1945). See Nationwide Mutual Insurance Co. v. Darden, --- U.S. ----, ---- - ----, 112 S.Ct. 1344, 1349-50, 117 L.Ed.2d 581 (1992) (noting breadth of definitions of "employ" and "employee" under the FLSA as compared to ERISA)
 
 
 [6]
 Assessing numerous factors, the trial court had previously found that for FLSA purposes, Fegley was an employee rather than an independent contractor. Fegley, 760 F.Supp. at 620-622. We agree with that analysis
 
 
 [7]
 When asked, "you believe that it was quite possible for Mr. Fegley to have worked 65 hours in at least some of the weeks while he was working there at Westco [the facility where Higgins rented space]?" Higgins responded, "It's possible." Joint App. at 1023
 
 
 [8]
 The Supreme Court noted:
 The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of the uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act.
 Mt. Clemens, 328 U.S. at 687, 66 S.Ct. at 1192; accord Hodgson v. American Concrete Constr. Co., 471 F.2d 1183, 1186 (6th Cir.), cert. denied, 412 U.S. 949, 93 S.Ct. 3007, 37 L.Ed.2d 1001 (1973).
 See also Reeves v. International Tel. and Tel. Corp., 616 F.2d 1342, 1352 (5th Cir.1980) (upholding unpaid wages awarded where employee's estimates of uncompensated hours worked "corresponded to the rough computations of his subconscious mind."), cert. denied, 449 U.S. 1077, 101 S.Ct. 857, 66 L.Ed.2d 800 (1981).
 
 
 [9]
 It may be worthy of notice that awards of attorney fees under FLSA Sec. 216 are mandatory, while awards of fees under Sec. 1988 are discretionary