NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0611n.06

No. 12-6059

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
*Jun 27, 2013*
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| MARCUS WERNER, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| BELL FAMILY MEDICAL CENTER, INC.; | ) | MIDDLE DISTRICT OF TENNESSEE |
| MIDDLE TN MEDICAL ASSOCIATES, | ) | |
| PLLC; NII SABAN QUAO, M.D., P.C.; | ) | |
| ARIKANA CHIHOMBORI, M.D., | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

Before: CLAY and COOK, Circuit Judges; OLIVER, District Judge[*]

COOK, Circuit Judge. Between 2005 and 2009, Plaintiff Marcus Werner worked as a certified ultrasound technician for defendants Bell Family Medical Center, Middle Tennessee Medical Associates, and Dr. Nii Saban Quao, P.C. (collectively, "medical centers"). The defendant medical centers classified him as an independent contractor and paid his requested hourly rate of $40, regardless of the frequency of ultrasound orders. In June 2009, after filing a wage complaint with the U.S. Department of Labor, Werner filed this lawsuit in state court seeking unpaid overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and Tennessee law. The medical centers fired him and removed the case to federal court. Werner amended his complaint

---

[*]The Honorable Solomon Oliver, Jr., Chief Judge, United States District Court for the Northern District of Ohio, sitting by designation.

to join one of the medical centers' owners as a defendant and to include retaliation and defamation claims.

After the district court denied his motion for summary judgment, the case proceeded to a jury trial. The jury returned a verdict for the medical centers on the FLSA claims, and Werner moved for judgment as a matter of law or a new trial.[1] His post-trial motion renewed an argument previously denied by the district court and squarely rejected by the jury: that his position, as the medical centers' certified ultrasound technician, qualifies for FLSA protections as an "employee" instead of an independent contractor. Finding ample record support for the jury's conclusion, the district court denied the motion, and Werner appeals. We AFFIRM the district court's judgment.

I.

We review the district court's denial of judgment as a matter of law under Rule 50(b) *de novo* and the denial of a new trial under Rule 59 for abuse of discretion. *Balsley v. LFP, Inc.*, 691 F.3d 747, 757, 761 (6th Cir. 2012). When reviewing a district court's denial of a motion for judgment as a matter of law, we "apply[] the same deferential standard as the district court: 'The motion may be granted only if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party.'" *Radvansky v. City of Olmsted Falls*, 496 F.3d 609,

---

[1]The jury did award Werner $15,000 on his defamation claim, and the district court entered judgment on this claim. Neither party challenges that judgment.

614 (6th Cir. 2007) (citations omitted). In other words, when reviewing a Rule 50(b) motion, we have no authority to reweigh the evidence or make credibility determinations, so as to substitute our judgment for that of the jury. *E.g.*, *Williams v. Nashville Network*, 132 F.3d 1123, 1131 (6th Cir. 1997). Yet, our review of a district court's denial of a motion for a new trial differs somewhat. The district court "must compare the opposing proofs and weigh the evidence," *Duncan v. Duncan*, 377 F.2d 49, 52 (6th Cir. 1967), and we will "reverse [the district court's] decision only if we have 'a definite and firm conviction that the trial court committed a clear error of judgment,'" *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 820 (6th Cir. 2000) (quoting *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989)). Further, "new trials are not to be granted on the grounds that the verdict was against the weight of the evidence 'unless that verdict was unreasonable.'" *Barnes*, 201 F.3d at 820–21 (quoting *Holmes v. City of Massillon*, 78 F.3d 1041, 1047 (6th Cir. 1996)).

This appeal hinges on whether Werner qualifies as an "employee" under the FLSA. The FLSA broadly defines "employee" as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), and "employ" as "to suffer or permit to work," *id.* § 203(g). In order to give full effect to this remedial legislation, we employ the "economic reality" test on a case-by-case basis, *Ellington v. City of East Cleveland*, 689 F.3d 549, 555 (6th Cir. 2012), asking "whether the putative employee is economically dependent upon the principal or is instead in business for himself," *Lilley v. BTM Corp.*, 958 F.2d 746, 750 (6th Cir. 1992). Though not "a precise test susceptible to formulaic application," *Ellington*, 689 F.3d at 555, the "economic reality" test encompasses the following non-

exhaustive considerations: (1) the permanency of the employment relationship; (2) the degree of skill required for rendering services; (3) the worker's investment in equipment or materials for the task; (4) the worker's opportunity for profit or loss, depending upon skill; (5) the degree of the alleged employer's right to control the manner in which the work is performed; and (6) whether the service rendered is an integral part of the alleged employer's business, *Donovan v. Brandel*, 736 F.2d 1114, 1117 & n.5 (6th Cir. 1984).

## II.

Werner argues that the district court should not have submitted this issue to the jury. Indeed, our cases recognize that courts usually should resolve the issue of FLSA-employment status as a matter of law. *E.g.*, *Fegley v. Higgins*, 19 F.3d 1126, 1132 (6th Cir. 1994); *Donovan*, 736 F.2d at 1116. Yet, in view of the fact-intensive nature of the "economic reality" test discussed above, we have not demanded rigid adherence to this practice. Rather, we have recognized that material factual disputes regarding employment status may require resolution by a factfinder in close cases. *Imars v. Contractors Mfg. Servs., Inc.*, No. 97-3543, 1998 WL 598778, at *6–7 (6th Cir. Aug. 24, 1998) (per curiam) (vacating summary judgment to the employer on FLSA claim, finding "mixed results" under the "economic reality" test, and remanding for a trial); *see also Troyer v. T.John.E. Prods., Inc.*, No. 12-1065, 2013 WL 1955892, at *2–3 (6th Cir. May 14, 2013) (affirming the district court's denial of a new trial, following a jury verdict classifying plaintiffs as independent contractors under the FLSA); *Lilley*, 958 F.2d at 750 n.1 (acknowledging, in the ADEA context, that a factfinder

should resolve the issue of employment status when genuine disputes of fact inhibit a straightforward application of the "economic reality" test).

These cases sensibly acknowledge that courts eschew summary judgment when presented with genuine disputes of fact, and we do not view them as conflicting with our FLSA precedents properly treating employment status as a question of law.[2] To the extent that Werner argues that the district court, and not the jury, should have resolved any factual disputes, he waived this stance in requesting a jury trial. (*See* R. 104, Joint Proposed Pretrial Order at 1 ("Jury Demand"); R. 152, Mem. Op. & Order at 2 (noting that both parties requested a jury trial).) And in the absence of objection to the legal instructions provided to the jury, we limit our review to whether the jury could

---

[2]Werner's appellate brief offers little resistance to *Imars* and none to *Lilley*, notwithstanding the district court's reliance on these decisions. *See Werner v. Bell Family Med. Ctr., Inc.*, No. 3:09 C 0701, 2012 WL 3284789, at *2–3 (M.D. Tenn. Aug. 10, 2012). Instead, he endorses several aspects of our non-precedential decision in *Imars* despite the fact that it remanded for a trial on the issue of FLSA employment status. (Appellant's Br. at 25–28.) His reply brief glosses over this aspect of *Imars*, suggesting that the court must have meant that the issue should be tried to the court and not a jury. (Appellant's Reply Br. at 4.) *Imars* did not so specify, and as noted above, Werner waived the option of a bench trial by requesting a jury trial.

Werner also invokes the Supreme Court's decision in *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709 (1986), but that case involved a different FLSA classification ("seaman," under 29 U.S.C. § 213), and more importantly, the Court did not address whether a jury could make findings of fact related to genuinely disputed FLSA claims. Rather, it vacated the appellate court's decision, which substituted *its* findings of fact for those found by the district court following a bench trial. *Icicle Seafoods*, 475 U.S. at 714 (criticizing the appellate court for "engag[ing] in such factfinding" instead of reviewing the district court's findings under the clearly erroneous standard). By limiting our review to the findings of fact of the parties' chosen factfinder—here, a jury—we avoid this pitfall.

reasonably conclude on the evidence presented that Werner worked as an independent contractor.

*See Troyer*, 2013 WL 1955892, at *1–2; *Radvansky*, 496 F.3d at 614.

III.

Werner denies that this case raised genuine disputes of fact and asserts that the undisputed

evidence compelled the conclusion that he was an "employee." *Cf. Castillo v. Givens*, 704 F.2d 181,

185 & n.9, 188 (5th Cir. 1983) (finding that the district court erred in submitting the issue to the jury

because the undisputed facts established employment status), *overruled on other grounds by*

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 134 (1988). But as the district court repeatedly

explained—most recently in denying Werner's post-trial motion—the evidence pertaining to the

"economic reality" factors permitted multiple inferences and was thus an issue for the jury, and the

jury reasonably concluded that the totality of the circumstances weighed against finding Werner an

"employee." According to the district court,

> Werner simply has not demonstrated that the jury erred in deeming him an independent contractor. Werner continues to gloss over the factual disputes that necessitated a trial in the first instance, and the competing inferences that can be drawn from even uncontested facts. For example, Werner contends that the degree of skill factor weighs in his favor because he could perform ultrasounds only if Drs. Chihombori and Quao ordered them for patients. Yet he acknowledges that he had specialized training and skills. While Werner attempts to downplay the significance of that unique training by contending that he just followed standard guidelines, he apparently does not dispute that no other worker could perform onsite ultrasounds for Defendants.
>
> With respect to the degree of control factor, Werner again points to the fact that he performed ultrasounds only when Defendants required them. This fact cuts

both ways, however. As a practical matter, no employee or independent contractor performs work not needed or requested by the employer. More importantly, Werner does not suggest that Defendants told him how to perform ultrasounds, critiqued their quality, or made recommendations on his work. Defendants told him to complete an ultrasound for a particular patient, but there is no question that he retained discretion to decide how best to do it. The parties also disputed whether Werner controlled his hours: although he was required to work until all patients had left, it appears that no ultrasounds took place onsite if he was not at an office when needed. Ultimately, multiple inferences could be drawn from these various facts, along with others, presented at trial.

By way of another example, Werner contends that his work was integral to Defendants' business because his procedures were more profitable than regular office visits. Certainly Werner's work contributed to the success and profitability of Defendants' medical practices. On the other hand, however, Werner cannot say that Defendants relied on his work to effectuate the primary purpose of their practices. The heart of Defendants' business was not providing ultrasounds, like an independent diagnostic facility, or providing ultrasound technicians, like a staffing agency—but operating full-service family medical practices. Werner does not allege, for example, that every patient, or even a significant percentage of patients, needed ultrasounds. Had the practices focused so heavily on ultrasounds, perhaps Defendants would have hired a technician for each location, each day of the week, rather than schedule Werner to rotate among the different offices. Regardless, and contrary to Werner's assertion, reasonable minds could draw more than one inference on these facts about the importance of Werner's work to Defendants' overall operation.

Conflicting inferences could also be drawn from the evidence of Werner's economic dependence on his work with Defendants. Werner contends that he was working too many hours for Defendants to find or hold another job. While that point is relevant, he also acknowledges that he was able to find other employment as an ultrasound technician in the area, both before and after his work with Defendants. Werner concedes that Defendants agreed to pay him what he asked when he was hired. Although Werner claims that the pay rate thus was not subject to negotiation, this argument falters. One could readily infer there was no need for the parties to negotiate when Defendants readily acquiesced in Werner's initial request. Under that interpretation, Werner set his own pay rate. The jury could have reasonably found on these facts that Werner was not bound to Defendants the way that typical "employees" are dependent on their employers.

In sum, while some of the evidence presented at trial surely support[s] Werner's position, other facts and inferences support the jury's conclusion that he

> was an independent contractor. The jury did not have to find facts and draw inferences in favor of Defendants as they did on Werner's wage claims, but they did so reasonably on the record before them. Because reasonable minds could have reached this verdict, it must be upheld.

*Werner v. Bell Family Med. Ctr., Inc.*, No. 3:09 C 0701, 2012 WL 3284789, at *4–5 (M.D. Tenn. Aug. 10, 2012) (record and case citations omitted).[3]

Werner resists this conclusion, pointing to evidence that he had a lengthy at-will employment relationship with the medical centers, during which time the centers controlled his hours and the number of ultrasounds, set his compensation, supplied his tools, and effectively precluded him from working elsewhere. He goes on to emphasize that the medical centers classified his replacement as an "employee." Further, he cites a DOL Fact Sheet advising that ultrasound technicians do not qualify for the FLSA's exemption of "bona fide executive, administrative, or professional" employees from the statute's minimum wage and overtime pay requirements, 29 U.S.C. § 213(a)(1). True enough, this evidence points to "employee" status, implicating the first (permanence), third (equipment), fourth (profit opportunity), and fifth (employer control of work) "economic reality" factors.[4] And the DOL Fact Sheet suggests that Werner would not qualify for

---

[3]We note that the court made these findings despite Werner's failure to include record citations in his post-trial motion. *Werner*, 2012 WL 3284789, at *3 (citing R. 179, Pl.'s JMOL Reply Br. 2).

[4]Werner does not address how the DOL's conclusion that he was an "employee" factors into the FLSA analysis (*see* Appellant's Br. at 4, 14), but we recognize that such agency determinations are relevant to other workplace discrimination claims. *See, e.g.*, *Kimble v. Wasylyshyn*, 439 F. App'x 492, 500 (6th Cir. 2011) (explaining that agency determinations regarding employment

§ 213's exemption. But when viewed in light of the substantial contrary evidence presented to the jury, the record does not compel the conclusion that this ultrasound technician worked as an "employee" as opposed to an "independent contractor."

In addition to the examples cited by the district court, the trial evidence showed that Werner: (1) agreed to begin work as an independent contractor believing the classification would provide tax benefits; (2) did not have an exclusive working relationship with the centers; (3) began working part-time and chose to work more hours and days at these facilities as the opportunities arose; (4) received separate paychecks from each of the medical centers and prepared his income tax returns as an independent contractor; and (5) received the pay rate he requested, which was significantly higher than his prior rate ($27/hour), that of his successor ($20/hour), and the market rate for ultrasound technicians during this time period ($18–$30/hour). (R. 183, 05/15/2012 Trial Tr. at 32–33, 76, 79, 84–86, 88; R. 186, 05/16/2012 Trial Tr. at 61–62.) Furthermore, other than placing ultrasound orders, the medical centers did nothing to control his performance of the service. (R. 183, 05/15/2012 Trial Tr. at 80, 86.) This evidence reveals a less permanent working relationship, wherein the certified ultrasound technician retained independence over the marketing of his specialized services, exercised unfettered discretion regarding their performance, and received his requested rate.

---

discrimination are relevant to litigation on the same subject).

Given these facts, one could reasonably conclude that Werner operated as a business unto himself and thus qualifies as an independent contractor. *See Donovan*, 736 F.2d at 1117–20 (affirming district court's "independent contractor" determination for pickle farmers, emphasizing their specialized skill set and the absence of employer supervision or control of the harvesting process). The district therefore properly determined that there were disputed issues of material fact regarding Werner's employment status which could lead a reasonable jury to determine that he was an independent contractor. We thus affirm the district court's denial of Werner's motion for a judgment as a matter of law. And because we can find no "clear error of judgment" in the district court's careful determination that the jury's verdict was not unreasonable, we affirm the court's denial of Werner's motion for a new trial.[5]

IV.

For the above reasons, we AFFIRM.

---

[5]The district court did not address Werner's remaining retaliation claim under the FLSA and state law because, as presented to the jury, it presupposed his "employee" status under the FLSA. (R. 164, Redacted Jury Verdict Form at 1.) We do likewise because Werner's appellate briefing neither objects to this jury instruction nor distinguishes his retaliation claim from his FLSA claims. *See United States v. Newsom*, 452 F.3d 593, 607 (6th Cir. 2006) (finding that the defendant "waived any challenge by failing to object to the jury instruction and failing to . . . raise the issue on appeal").