Gedeon WALES, et al., Plaintiffs,

v.

JACK M. BERRY, INC., et al., Defendants.

No. 2:95–CV–66–FTM–TGW.

United States District Court, M.D. Florida, Ft. Myers Division.

Dec. 21, 2001.

A. Neal Barkus, Jeffrey B. Hardie, Hunton & Williams, Washington, DC, D. Alan Rudlin, Hunton & Williams, Richmond, VA, Thomas M. Mackall, Hunton & Williams, Washington, DC, Cathy L. Lucrezi, Law Office of Cathy L. Lucrezi, Ft. Meyers, FL, for Plaintiffs.

G. ParisSykes, Jr., David P. Phippen, Kilpatrick Stockton, L.L.P., Atlanta, GA, James Lawrence Nulan, Henderson, Franklin, Starnes & Holt, P.A., Ft. Meyers, FL, for Defendants.

### ORDER

WILSON, United States Magistrate Judge.

The plaintiff migrant workers have prevailed in this case on their claims under the Fair Labor Standards Act ("FLSA"). Accordingly, they have filed a motion for an attorneys' fee (Doc. 335). Having considered the materials submitted, the parties' oral arguments, and the governing legal standards, I find that the plaintiffs are entitled to $352,225.40 in an attorneys' fee, and $131,653.59 in expenses.

### I.

The facts of this case have been set forth in detail in two documents following the liability and damage trials (Docs. 262, 332). They need not be repeated here. It is enough to say that in this case the plaintiff class members were awarded what now appears to be in excess of $800,000 in actual and statutory damages pursuant to the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. 1801–1872, and certain plaintiffs were awarded approximately $21,000 in unpaid wages and liquidated damages pursuant to the FLSA. The plaintiffs also prosecuted, unsuccessfully, two additional claims under the AWPA: one for retaliation and one for unpaid bonuses.

The plaintiffs have pointed out that the Eleventh Circuit has held that under the FLSA an attorneys' fee is an integral part of damages and thus judgment could not be entered until the attorneys' fee was resolved. *See Shelton v. Ervin*, 830 F.2d 182 (11th Cir.1987). Accordingly, after the Order was entered determining damages, the plaintiffs moved for an award of an attorneys' fee in the amount of $2,053,610, and expenses in the amount of $154,117 (Doc. 335, p. 27). Both sides have submitted a memorandum and documentation supporting their positions, and oral argument has been presented.

Although the plaintiffs' main recovery was based upon the AWPA, they cannot receive an attorneys' fee under that statute because it has no fee-shifting provision. The FLSA, however, has such a provision and that is the basis for the plaintiffs' claim for an attorneys' fee. Thus, the FLSA provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. 216(b). The plaintiffs note that under this provision an award of an attorneys' fee is mandatory. *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1542 (11th Cir.1985). What is also mandatory, however, is that the fee be reasonable.

## II.

A reasonable attorneys' fee is "properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). In this calculation, the court should exclude hours that were not reasonably expended. *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). This "lodestar" may then be adjusted upward or downward based on other considerations, including the results obtained and the quality of representation. *Id.; Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir.1994).

"The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1303 (11th Cir.1988). With respect to rates, an applicant may meet this burden by producing either direct evidence of rates charged under similar circumstances, or opinion evidence of reasonable rates. *Id.* at 1299. In addition, the court may use its own expertise and judgment to make an appropriate independent assessment of the value of an attorney's services. *Id.* at 1303. With respect to hours, if an applicant's documentation "is inadequate, the district court may reduce the award accordingly." *Hensley v. Eckerhart, supra*, 461 U.S. at 433, 103 S.Ct. 1933.

### A. *Hourly Rates.*

A first step in the computation of the lodestar is determining the reasonable hourly rate. The prevailing market rate for similar services by similarly trained and experienced lawyers in the relevant legal community is the established basis for determining a reasonable hourly rate. *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir.1996). The party seeking fees bears the burden of establishing the market rate and should present the court with "specific and detailed evidence" from which it can determine the reasonableness of the proposed rate. *Norman v. Housing Authority of Montgomery, supra*, 836 F.2d at 1303.

In this case, the plaintiffs seek compensation for the services of fifteen lawyers and four paralegals (Doc. 336, App. A). This suit was filed by Florida Rural Legal Services and handled for them by Steven G. Hitov and Christine E. Larson. In 1996, due to limitations imposed by Congress on the work of that organization, the case was taken over by the firm of Hunton & Williams as a *pro bono* matter. Working on the case for that firm were attorneys A. Neal Barkus, Thomas M. Mackall, Jeffrey B. Hardie, Paul Mirengoff, D. Alan Rudlin, Kelly L. Faglioni, Peter Crane Anderson, Susan Wiltsie, Dina Gold, Scot Hinshaw, and Maureen Walsh, and paralegals Ed Kichline and Constance Corry. Hunton & Williams also retained as local counsel, Cathy L. Lucrezi and, briefly, J. Jeffrey Rice. In addition, it hired Laura Germino and Greg Asbed as local paralegals.

The defendants do not challenge the rates for Hitov, Larson, Lucrezi and Rice (Doc 341, p. 13). They also do not dispute the rates for paralegals Germino and Asbed (*id.*). What they do challenge are all of the rates claimed by Hunton & Williams, except for the rate of paralegal Kichline.

Hunton & Williams is a law firm based in Richmond, Virginia, with offices in at least Washington, D.C. and Charlotte, North Carolina. Barkus, the lead attorney in this case, is employed in the Washington office and requests a fee based upon his current hourly rate of $425. The other ten Hunton & Williams attorneys claim rates ranging from $170 to $335 per hour, while a paralegal (Corry) seeks compensation at

the rate of $110 per hour (Doc. 336, App. A).

■ The defendants object to the rates requested by Hunton & Williams on the ground that they exceed the rates normally charged in this area. As indicated, "[t]he general rule is that the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is filed.'" *American Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 437 (11th Cir.1999). If an applicant seeks to recover at non-local rates, "he must show a lack of attorneys practicing in that place who are willing and able to handle his claims." *Id.*

■ The plaintiffs attempt to come within this exception. Thus, they have submitted an affidavit from Hitov which purports to show that there were no local firms available to take the case. Hitov's affidavit, however, demonstrates only a limited search for local counsel. Hitov avers that he inquired in January 1995 of several large firms with offices in Florida while at an American Bar Association ("ABA") meeting; he asked another large Florida firm and a smaller civil rights firm; and he then sought the referral from the ABA that led to Hunton & Williams (Doc. 342, Ex. 3). This limited inquiry fails to persuade me that there were no firms in this area willing and able to take this case. Rather, I agree with the opinion expressed by Peter W. Zinober, an experienced labor and employment lawyer in Tampa, that "there are lawyers and law firms from Tampa south to Fort Myers and Naples who are capable and would be willing to represent plaintiffs in cases similar to this"

(Doc. 342, Ex. 6, p. 4). Accordingly, the plaintiffs have failed to make the showing necessary to justify a non-local rate.

Furthermore, there are other considerations which militate against using a non-local rate. In the first place, Hunton & Williams is deemed to have known when it took this *pro bono* matter that, if an attorney's fee was awarded in the future, it would most likely be in accordance with the general rule to use local rates. The firm reasonably could not have had any expectation otherwise.

Moreover, the defendants have made a strong showing that this case was close to settlement prior to the time Hitov ended his participation (*see* Doc. 341, pp. 6–8).[1] While for reasons subsequently explained this showing does not warrant cutting off all attorneys' time from that point, it does counsel against using a non-local rate. Seemingly, from Hitov's perspective, with settlement close, this case at that time would not need a large law firm with an army of lawyers and huge financial resources in order to resolve the matter. After all, Hitov and an associate were apparently handling the matter adequately before they were forced off the case by congressional limitations.

The defendants argue further that it was the plaintiffs who prolonged this litigation by their refusal to pursue an early settlement and thus the use of historical billing rates would be appropriate. The defendants agree, however, to use current rates for the sake of simplicity (Doc. 341, p. 13 n. 5). Since the plaintiffs are being given the benefit of the use of current rates, that advantage should not be en-

---

1. In the Order determining damages, I commented with respect to the arguments regarding statutory damages that there was no reasonable possibility of a settlement (Doc. 332, p. 36). The defendants have now presented materials which demonstrate otherwise. That

showing, however, does not warrant any modification in my ruling regarding statutory damages, especially since I have subsequently been informed that the statutory damages that were awarded will fall near the bottom of the potential range that was contemplated.

hanced by the use of current non-local rates.

For these reasons, the lodestar amount will be computed using current local rates. Not surprisingly, the parties do not agree on those rates.

■ The plaintiffs have submitted an affidavit from Thomas T. Steele, an experienced local attorney practicing in the area of antitrust, unfair trade practices and related complex business litigation (Doc. 336, Affidavits). His current hourly billing rate is $325, and his rates from 1996 to the present have ranged from $245 to $350 per hour (*id.*). He expressed the opinion that the proper hourly rate in a complex wage-hour class action by a senior partner in a substantial law firm in this district should be similar to his hourly rates for the years in question. He said further that, for a litigator having twenty or more years experience in complex business cases, an hourly rate of $245 to $275 would be fair and reasonable.

At the hearing, this affidavit was construed by the plaintiffs to mean that Barkus should be compensated at the hourly rate of $325. That is a questionable construction of the affidavit. If that is what was intended, however, the opinion will not be accepted, since not only does it relate to a type of practice not involved here, but also it seems to overstate the prevailing rate in this district.

The affidavit of Peter Zinober, on the other hand, appears to be more on point. In that affidavit, Zinober states that he practices in the area of labor and employment law and that his current rate is $275 per hour (Doc. 342, Ex. 6). He set forth a schedule of rates which included a rate of $210 to $260 per hour for a senior partner with more than fifteen years experience. The top of this range seems to slightly understate the prevailing rate in this district for a lawyer of Barkus's experience. Rather, Barkus should be compensated at

the $275 per hour rate currently charged by Zinober. Barkus and Zinober are comparable lawyers and match up the best.

Other considerations come to mind in choosing the rate of $275 per hour. Thus, at the trials and hearings, Barkus seemed to stand out from the other lawyers on the plaintiffs' side with respect to his presentation. This factor could justify a rate above $275 per hour. On the other hand, Barkus and his colleagues expended thousands of hours litigating this case and obtained a result that was not much better, if it was better at all, than could have been obtained by settlement around the time Hunton & Williams took over the case. Since the ability to assess one's case accurately is part of the legal skill that is being compensated, the failure to pursue the settlement and avoid litigation could warrant a downward adjustment. In the end, it seemed to me that those factors, to the extent they were meaningful, simply cancelled each other out. Consequently, the rate for Barkus should be set at the $275 hourly rate currently used by Zinober.

At the hearing, the plaintiffs presented a schedule showing the ratio between the rate charged by Barkus and the ten other lawyers from Hunton & Williams for whom a fee is sought. The maintenance of this ratio appears to be a reasonable method of establishing the hourly rates of the other Hunton & Williams attorneys. Consequently, the rates of the Hunton & Williams lawyers will be set as follows:

| Attorney | Ratio to Barkus rate | Rate per hour (rounded to the nearest dollar) |
|---|---|---|
| Barkus | — | $275 |
| Mackall | .66 | $182 |
| Hardie | .58 | $160 |
| Anderson | .55 | $151 |
| Rudlin | .75 | $206 |
| Mirengoff | .65 | $179 |
| Faglioni | .55 | $151 |
| Wiltsie | .71 | $195 |
| Gold | .49 | $135 |
| Hinshaw | .4 | $110 |
| Walsh | .4 | $110 |

The defendants also challenge the rate of $110 per hour for Corry, a paralegal. There are no affidavits from local practitioners addressing the local market rates for paralegals. However, my experience in other matters leads me to conclude that a rate of $110 per hour is way out of line. The rate of $65 per hour sought for the other paralegal from Hunton & Williams is, based upon my experience, within the range of prevailing market rates. Accordingly, Corry, like Kichline, will be compensated at a rate of $65 per hour.

The undisputed rates for the remaining six individuals are as follows (*see* Doc. 336, App. A):

| Attorney | Rate |
| --- | --- |
| Hitov | $235 |
| Larson | $225 |
| Lucrezi | $175 |
| Rice | $195 |

| Paralegals | Rate |
| --- | --- |
| Germino | $ 14 |
| Asbed | $ 14 |

B. *Reasonableness of the Number of Hours Expended.*

The next step in the lodestar analysis is to determine what hours were reasonably expended on the litigation.[2] In calculating this, the court should exclude excessive, unnecessary and redundant hours, and also time spent litigating discrete and unsuccessful claims. *Duckworth v. Whisenant, supra,* 97 F.3d at 1397. Further, a court is to exclude hours spent on distinct successful claims for which there is no statutory fee-shifting authority. *Northeast Women's Center v. McMonagle,* 889 F.2d 466, 476 (3d Cir.1989), *cert. denied* 494 U.S. 1068, 110 S.Ct. 1788, 108 L.Ed.2d 790.

" 'Objections and proof from fee opponents' concerning hours that should be excluded must be specific and 'reasonably precise.' " *American Civil Liberties Union of Georgia v. Barnes, supra,* 168 F.3d at 428; *see also, Norman v. Housing Authority of Montgomery, supra,* 836 F.2d at 1301. Thus, generalized statements that the time spent was unreasonable or unnecessary are not particularly helpful and not entitled to much weight. *Norman v. Housing Authority of Montgomery, supra,* 836 F.2d at 1301. Accordingly, a fee opponent's failure to explain exactly which hours he views as unnecessary or duplicative is generally viewed as fatal. *See Gray v. Lockheed Aeronautical Systems Co.,* 125 F.3d 1387 (11th Cir.1997). Consequently, all hours as to which the defendants have not made an objection will be accepted.

---

2. The parties have approached this case as if it presented a typical attorneys' fee situation. In fact, the time records are voluminous. The Eleventh Circuit has said that, in such a circumstance, an hour-by-hour analysis is "impractical and a waste of judicial resources." *Loranger v. Stierheim, supra,* 10 F.3d at 783. The accuracy of this statement is confirmed by my mind-numbing review of the myriad of one-quarter hour entries. Even if I made one hundred errors with respect to those entries (and the errors did not balance out), it would only make a difference of twenty-five hours, which is an inconsequential amount in this case. Furthermore, throughout this exercise, it was apparent to me that the hour-by-hour review would not produce a reasonable attorneys' fee since, even if I exclude all the entries to which the defendants noted their objections on the time sheets, the amount of the fee yielded by the lodestar method would still be too high in light of the FLSA result. Nevertheless, because the parties have advanced no other basis for computing the attorneys' fee, I have engaged in the hour-by-hour analysis. However, because of my skepticism about the appropriateness of that approach, I did not double-check the figures regarding the time entries and therefore do not guarantee their precise mathematical accuracy; it seems to me that in this case a fairly close approximation of the number of hours should suffice. Furthermore, since a reviewing court also should not be required to engage in an hour-by-hour evaluation in this case, I have abandoned my idea of incorporating the minutiae from my notes into a footnote or attachment. The presentation of such details would simply compound the waste of time.

As a corollary to this, because the defendants have not disputed the plaintiffs' computation of the totals and subtotals of the hours, the hours credited will be calculated simply by subtracting from those subtotals the hours that are determined to be excludable.

The defendants have identified several categories of hours that they contend should be excluded. Some of those contentions have merit and some do not.

1. The defendants contend that work concerning AWPA issues should be excluded since that statute does not have a fee-shifting provision.[3] The plaintiffs do not contest that point, but state that they have already excluded such work. However, they have not completely done so; there are still hours listed that are expressly stated to have been expended on AWPA issues. Those hours will be excluded.

The defendants, however, also place into this category hours that do not clearly reflect time spent on AWPA issues. As to those hours, the defendants have not adequately justified their objections. Thus, the defendants' basic approach is simply to place in the margin of the billing statements a letter reflecting a category of objections and then make some general comments about that category in their memorandum. What the defendants have failed to do for the most part is make particularized objections to specific entries. As previously indicated, conclusory objections are not sufficient. *See Gray v. Lockheed Aeronautical Systems Co., supra.* Defendants do correctly note, however, that work concerning the class, injunctive relief and prejudgment interest relates solely to the AWPA (Doc. 341, p. 14 n. 6).

Consequently, objections based upon work for AWPA issues will be sustained where the entries themselves make clear that the work was for that purpose, and objections will be rejected where it is not apparent on the face of the entries that AWPA work was involved.

Under these principles, hours will be excluded for the various individuals in the following amounts:

Barkus (17), Faglioni (34.75), Gold (4.5), Hardie (20.25), Hinshaw (61.25), Kichline (3.75), Mackall (35.25), Rudlin (3.25), Walsh (12.75), Wiltsie (9.75), Germino (.5), Larson (17.25), Lucrezi (.2) and Rice (.2).[4]

2. The defendants seek to exclude, under code "B," time spent on "Baseless Arguments and Unreasonable Motions" (Doc. 341, p. 15). In support of this contention, the defendants have set forth brief descriptions of seven matters (Doc. 342, Ex. 10). However, time is not excluded simply because a motion is denied or a task proves unsuccessful. *Hensley v. Eckerhart, supra,* 461 U.S. at 440, 103 S.Ct. 1933; *Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.,* 63 F.3d 516, 526 (7th Cir.1995); *Blum v. Witco Chemical Corp.,* 829 F.2d 367, 378 (3d Cir.1987). The defendants' short commentary fails to demonstrate that the seven matters go beyond failed motions and unsuccessful work and reach the level of frivolousness. Consequently, this category of objections will be rejected.

3. The defendants challenge, under code "D," hours which were purportedly the result of "Duplicative Activity or Attendance" (Doc. 341, pp. 15–16). In sup-

---

3. These objections are reflected on the time sheets annotated by the defendants (Doc. 342, Ex. 9) by the code letter "A."

4. It is noted that, with respect to the time of Mackall and Larson, there were entries for a date that contained excludable time, as well as compensable time, but failed to specify the amount of time devoted to particular tasks. In that event, the entire entry was disallowed. *See* pp. 16–17, *infra.*

port of this contention, the defendants have submitted a statement that is even more cryptic than the one provided in connection with the previous category (Doc. 342, Ex. 10). That will not suffice. It is not necessarily objectionable for a party to have more than one lawyer appear at a proceeding. *See Norman v. Housing Authority of Montgomery, supra,* 836 F.2d at 1302. Barkus explained in his affidavit the need for the number of lawyers that worked on this case (Doc. 338, pp. 6–7). He also stated that he reviewed the time sheets of each of the individuals who worked on the case and excluded time spent on tasks that would not be billed to a client. He gave examples of time he excluded for work performed by several people, including much of the trial time of Anderson, who is a subject of this objection (*id.,* pp. 7–8). He stated that the time for which a fee was sought was not only reasonable, but necessary.

In light of Barkus's affidavit, the defendants had to provide some basis for concluding that the work challenged was duplicative. Nothing in the defendants' brief comments indicates to me that this was so. Accordingly, this category of objections will also be rejected.

4. The defendants object, under code "E," to "Excessive Charges Not Reasonably Incurred" (Doc. 341, p. 16). Here, the defendants have not provided reasons for concluding that each of the specific entries marked "E" contain excessive hours. Furthermore, they have made no attempt to indicate what a reasonable lesser number of hours would be, but simply seek to have all hours stricken. This does not furnish me with sufficient information to discount excessive hours. Accordingly, these objections will be denied.

5. The defendants object, under code "G," to "Grouped Task Descriptions Making It Impossible to Determine the Relationship of the Task" to the FLSA claim (Doc. 341, p. 16). This objection will be sustained to the extent that an objection under a different category has been accepted and the plaintiffs have failed to specify the time spent on the different tasks included within the entry. For example, as previously noted, work recorded by Mackall and by Lucrezi in a single entry was all excluded where some of the work related to AWPA issues and some did not, but no breakdown of the time spent on those tasks was given.

Moreover, even when the "G" notation is not provided, but there is an objection of an insufficient description, the same principle will be applied to exclude all work in an entry where some of the work likely relates to the FLSA and some relates to the AWPA. For example, work described as preparing proposed conclusions of law will be entirely excluded even though some of the work might well have related to the FLSA.[5]

6. The defendants have sought to exclude under code "I" hours for which there were "Insufficiently Described Entries Making It Impossible to Determine A Relationship to" the FLSA claim (Doc. 341, p. 16). This is the largest category of objections relating to specific time entries. In considering this category, I accept the plaintiffs' proposition that the facts supporting the FLSA claim and the AWPA claim tend to be the same. Consequently, tasks relating to discovery and pretrial motions will generally be considered as applying to the case as a whole and thus compensable. This principle will also ap-

---

**5.** Some entries for Barkus grouped tasks and contained an insufficient description of one of them. I would have rejected the total time claimed for that entry, but the defendants

only objected to a portion of the time. The objection was sustained only for the amount indicated by the defendants.

ply to the preparation and handling of exhibits and the creation of a computer database. Accordingly, as to those matters, I will not view the absence of a particularized description as warranting the exclusion of the hours.

On the other hand, the legal issues are discrete and can typically be identified easily as related to the FLSA or the AWPA. Importantly, from the outset, plaintiffs' counsel most likely knew (and certainly should have known) that the only basis for recovery of an attorneys' fee could be the FLSA, and that work done on the AWPA was not similarly compensable. Especially in these circumstances, a fee applicant "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley v. Eckerhart, supra,* 461 U.S. at 437, 103 S.Ct. 1933. Accordingly, an entry that, for example, merely states "conducted legal research" is patently insufficient since the subject of the research could be readily identified. The failure to specify the subject of legal work will therefore result in the exclusion of the hours under consideration.

In addition, any objection to an entry referring to a conference, a telephone call, or the like will be sustained if the entry does not identify the subject of the communication. While it is not expected that discussions or other messages should be particularized in detail, it is easy enough to add a couple of words regarding the subject matter of the communication in order to show that it is compensable under the FLSA—if it is. Consequently, where such a specification is missing, the objection of insufficient entry will be sustained.

Further, the defendants have objected with a notation of "I" to some work related to an attorneys' fee. Those objections have not been accepted since the entries made clear that the claim was for an attorneys' fee under the FLSA. Of course, time spent on a fee application is compensable. *Johnson v. Mississippi,* 606 F.2d 635, 638–39 (5th Cir.1979).

The defendants' objections regarding insufficiency of the time entries result in the exclusion of hours for the following attorneys and paralegals in the amounts indicated:

Anderson (104), Barkus (243.75), Corry (27.5), Faglioni (25.5), Gold (.25), Hardie (239.25), Hinshaw (13.5), Kichline (96.5), Mackall (550), Mirengoff (108.5), Rudlin (21), Walsh (15.75), Wiltsie (9), Germino (41.25), Asbed (8.5), Larson (.5), Lucrezi (.45) and Rice (8.3).

■■■ 7. The defendants object, under Code "M," to time expended on "Marketing and Public Relations" activity (Doc. 341, p. 17). The plaintiffs have provided no justification for fee-shifting of time spent on this type of activity. Accordingly, the following individuals will have hours excluded for time expended on marketing or public relations activity in the amount noted:

Barkus (11.5), Faglioni (9.5), Mackall (.5), Rudlin (2.5), Germino (5.2), Asbed (1) and Larson (.25).

■■■ 8. The defendants, under Code "N," object to "Activity to Get New Plaintiffs" to opt in to the FLSA claim (Doc. 341, pp. 17–18). Time spent soliciting additional plaintiffs is not compensable. *American Civil Liberties Union of Georgia v. Barnes, supra,* 168 F.3d at 435–36. On that basis, the following time will be excluded:

Barkus (4.75), Faglioni (.25), Mackall (1.5), Rudlin (2.25), Germino (13.25) and Asbed (4.25).

■■■ 9. The defendants object, under Code "T," to "Travel Time Not Productively Spent on [the] Case and Charged Unreasonably at the Full Hourly Rate" (Doc. 341, p. 18). Specifically, the defendants object to hours spent traveling between a

Hunton & Williams' office and Florida, and between Hunton & Williams' offices. The defendants assert that local counsel would not have expended this time. That, however, is not sufficient reason to deny compensation for travel time. Rather, it must appear that it was unreasonable not to hire local counsel. *Johnson v. University College of University of Alabama in Birmingham,* 706 F.2d 1205, 1208 (11th Cir.1983). While, as indicated in the discussion regarding rates, I think that there were local counsel who would have been available to handle this case, I also think that, under the circumstances, it was reasonable for the plaintiffs to retain Hunton & Williams (on a *pro bono* basis) to represent them. The defendants, after all, considered it reasonable to hire out-of-state counsel. Accordingly, the objections to time spent traveling to, and from, Hunton & Williams' offices will not be sustained.

The defendants request, alternatively, that the travel time be compensated at fifty percent of the applicable rate. This, however, is simply another way of saying that the attorneys should be compensated only for one-half of the time spent traveling. The defendants have not provided a

persuasive reason why the other half of the time expended should be disregarded. Moreover, the normal rates of the Hunton & Williams attorneys were reduced substantially to conform to local rates. This rate decrease cuts significantly the compensation for travel time. A further reduction does not seem warranted.

10. The defendants object, under Code "U," to time spent on immigration issues, internal staffing matters, research on mitigation of damages (which pertains only to the retaliation claim in Count III), and work on the bonus claim in Count IV (Doc. 341, p. 18). To the extent the time entries do not reflect work litigating matters that encompass the FLSA claim (and the time has not already been deducted), the objections will be sustained. However, when the time entry fails to indicate that it falls within this objection, and the defendants do not explain why it does, the objection will be rejected. With respect to this category, the following hours will be excluded: Anderson (3), Barkus (3.75), Faglioni (3.75), Kichline (10), Mackall (3.5) and Rudlin (1.75).[6]

11. A summary of the computation of hours to this point is as follows:

| Attorney | Hours Claimed | Hours Excluded | Hours Allowed |
|---|---|---|---|
| Barkus | 1,739.50 | 280.75 | 1,458.75 |
| Mackall | 2,160.00 | 590.75 | 1,569.25 |
| Hardie | 767.25 | 259.50 | 507.75 |
| Anderson | 426.25 | 107.00 | 319.25 |
| Rudlin | 257.50 | 30.75 | 226.75 |
| Mirengoff | 151.50 | 108.50 | 43.00 |
| Faglioni | 157.00 | 73.75 | 83.25 |
| Wiltsie | 89.75 | 18.75 | 71.00 |
| Gold | 109.25 | 4.75 | 104.50 |
| Hinshaw | 126.75 | 74.75 | 52.00 |
| Walsh | 60.00 | 28.50 | 31.50 |
| Lucrezi | 30.30 | .65 | 29.65 |
| Rice | 14.00 | 8.50 | 5.50 |

**6.** There is one time entry of 3.75 hours for an individual named Guignard. It does not appear that the plaintiffs are seeking compensation for that entry. In any event, the defendants' objection to the entry is sustained under this category.

| | Hours Claimed | Hours Excluded | Hours Allowed |
|---|---|---|---|
| Hitov | 280.70 | (not disputed *see* Doc. 342, Ex. 14) | 280.70 |
| Larson | 47.50 | 18.00 | 29.50 |
| **Paralegals** | | | |
| Kichline | 719.50 | 110.25 | 609.25 |
| Corry | 269.00 | 27.50 | 241.50 |
| Germino | 680.50 | 60.20 | 620.30 |
| Asbed | 312.41 | 13.75 | 298.66 |

### III.

The defendants assert additional grounds for excluding certain hours in the lodestar computation. None of those grounds justifies a further decrease in the hours that are allowed.

■ A. The defendants argue that all work performed after March 4, 1997, should be excluded because an offer of judgment on the FLSA claim was made that day pursuant to Rule 68, F.R.Civ.P., and the plaintiffs' subsequent recovery under the FLSA was less than the amount in the offer (Doc. 341, pp. 19–22). However, even the authority cited by the defendants holds "that Rule 68 does not bar any award of attorney fees in an FLSA case for services rendered after a Rule 68 offer is made and a plaintiff recovers less than the amount offered in settlement." *Haworth v. Nevada,* 56 F.3d 1048, 1052 (9th Cir.1995); *see also Dalal v. Alliant Techsystems, Inc.,* 182 F.3d 757, 760 (10th Cir. 1999); *Fegley v. Higgins,* 19 F.3d 1126, 1135 (6th Cir.1994). Consequently, the defendants have provided no basis for excluding all work performed after March 4, 1997.

The appropriate approach, as set forth in *Haworth,* is to consider a Rule 68 offer in determining the reasonableness of an attorney's fee. Thus, "[w]hen a plaintiff rejects a Rule 68 offer, the reasonableness of an attorney fee award under the FLSA will depend, at least in part, on the district court's consideration of the results the plaintiff obtained by going to trial compared to the Rule 68 offer." 56 F.3d at 1052.

Application of that principle is clouded by the circumstances of this case. The offer stated that all FLSA claimants had to accept in order for it to be effective (Doc. 342, Ex. 11). *See Lang v. Gates,* 36 F.3d 73, 75 (9th Cir.1994), *cert. denied,* 513 U.S. 1017, 115 S.Ct. 579, 130 L.Ed.2d 494 (Rule 68 offer conditioned upon acceptance by multiple plaintiffs held valid). Moreover, the offer did not cover the AWPA claims. These circumstances suggest that the offer may simply have been a tactical maneuver to eliminate the claim with the fee-shifting provision, and not an effort to settle the entire case.

Further, plaintiffs' counsel represented at the hearing that the offer was only good for ten days and that, in that short period, the attorneys could not contact all of the FLSA plaintiffs, who are migrant workers. Such a circumstance, if established, would also militate against giving weight to the failure to accept a Rule 68 offer in determining the reasonableness of an attorneys' fee.

It is therefore difficult in this case to factor into the calculation of a reasonable attorneys' fee the plaintiffs' failure to accept the Rule 68 offer. There appears no need to wrestle with this issue because the defendants' argument that the case should have been settled at an earlier date presents a clearer situation and is more persuasive.

B. The defendants argue that all time expended after October 1, 1996, should be excluded because of the failure of plaintiffs' counsel to agree to a settlement of the case that in all likelihood would have been more beneficial than the results finally obtained (Doc. 341, pp. 22–24). In this respect the defendants seek to show that settlement discussions with attorney Hitov had reached a point where settlement appeared likely, but that, when the Hunton & Williams attorneys replaced Hitov, they unreasonably raised the plaintiffs' settlement demands.

Like the Rule 68 situation, these circumstances provide no basis for simply excluding all hours worked after October 1, 1996. They do, however, present a factor that should be considered when calculating a reasonable attorneys' fee. Accordingly, they will be taken into account in deciding whether the lodestar amount should be adjusted.

C. The defendants argue that no hours should be credited to Hunton & Williams attorneys before June 17, 1996, because they had stated in a pleading that they were not active counsel prior to that date (Doc. 341, p. 25). This circumstance is not sufficient by itself to deny compensation for work actually performed. The defendants had an opportunity to object to time expended before June 17, 1996, and those objections should be the basis for the exclusion of any time expended by Hunton & Williams lawyers prior to June 17, 1996.[7]

## IV.

The lodestar amount is therefore computed as follows:

| Attorney | Hours | Rate | Compensation |
|---|---|---|---|
| Barkus | 1,458.75 | $275 | $ 401,156.25 |
| Mackall | 1,569.25 | $182 | $ 285,603.50 |
| Hardie | 507.75 | $160 | $ 81,240.00 |
| Anderson | 319.25 | $151 | $ 48,206.75 |
| Rudlin | 226.75 | $206 | $ 46,710.50 |
| Mirengoff | 43.00 | $179 | $ 7,697.00 |
| Faglioni | 83.25 | $151 | $ 12,570.75 |
| Wiltsie | 71.00 | $195 | $ 13,845.00 |
| Gold | 104.50 | $135 | $ 14,107.50 |
| Hinshaw | 52.00 | $110 | $ 5,720.00 |
| Walsh | 31.50 | $110 | $ 3,465.00 |
| Lucrezi | 29.65 | $175 | $ 5,188.75 |
| Rice | 5.50 | $195 | $ 1,072.50 |
| Hitov | 280.70 | $235 | $ 65,964.50 |
| Larson | 29.50 | $225 | $ 6,637.50 |
| Paralegals | | | |
| Kichline | 609.25 | $ 65 | $ 39,601.25 |
| Corry | 241.50 | $ 65 | $ 15,697.50 |
| Germino | 620.30 | $ 14 | $ 8,684.20 |
| Asbed | 298.66 | $ 14 | $ 4,181.24 |

Total Compensation $1,067,349.69

An attorneys' fee award of more than $1,000,000 for a recovery of about $21,000 would be patently excessive. The Supreme Court has said that in determining a reasonable attorneys' fee, "the most critical factor is the degree of success obtained." *Hensley v. Eckerhart, supra,* 461 U.S. at 436, 103 S.Ct. 1933. Based on that principle, the defendants argue that the attorneys' fee should be reduced, asserting that fourteen FLSA plaintiffs obtained no recovery at all, and the remaining fifty-one plaintiffs recovered about fifteen percent of the amounts they had sought (Doc. 341, pp. 25–26).

The plaintiffs, on the other hand, assert that they "achieved an excellent result" (Doc. 336, p. 1). That assertion is questionable with respect to the case as a whole, and it is certainly not true with respect to the FLSA count. Notably, the plaintiffs failed to prove their central theme that the defendants were motivated by an intent to cheat the workers. Further, they failed to establish their fundamental contention that the estimated workday should be a minimum of eleven

---

7. It is noted, contrary to the defendants' assertion (Doc. 341, p. 25 n. 17), that it was reasonable for Barkus to appear at the deposition of a significant witness during the transition phase.

hours. In addition, the defendants made a persuasive showing that the plaintiffs could have settled this case at an early stage for more than they ended up recovering.

It is unclear whether the plaintiffs are contending that, in considering the degree of success, the recovery on the AWPA claim should be taken into account. They acknowledge, however, that they are not entitled to compensation for work performed solely on AWPA issues. Similarly, a modification in the lodestar amount should not be affected by a recovery on that non-fee-shifting claim. Congress did not authorize an award of an attorneys' fee to a successful AWPA claimant. It is therefore illogical to think that any attorneys' fee should be influenced by the result on an AWPA claim. If Congress had wanted an AWPA claim to have an impact upon an attorneys' fee, it would have included a fee-shifting provision in that Act. Accordingly, just as I will not consider the two unsuccessful AWPA claims in determining the attorneys' fee award, I also will not consider the successful AWPA claim. Rather, in determining the amount of the attorneys' fee to be awarded pursuant to the FLSA fee-shifting provision, I will consider only the plaintiffs' degree of success on the FLSA claim.

The plaintiffs argue further that their lawsuit resulted in a change in the defendants' operations. While, as previously described (Doc. 332, pp. 42–43), defendant Eagle Lake is no longer functioning and defendant Jack M. Berry, Inc., has restructured its business so that it no longer employs any pickers, the plaintiffs have presented no evidence demonstrating that these changes were the result of this lawsuit. Accordingly, the plaintiffs cannot claim credit for modifying the defendants' operations.

Similarly, the plaintiffs did not obtain any substantial injunctive relief. Thus, although the plaintiffs sought injunctive relief that would have changed how the defendants conducted business, the only injunctive relief that was awarded was a direction to notify the Social Security Administration of additional earnings. In all events, injunctive relief was available only under the AWPA, and not the FLSA (Doc. 332, p. 40 n. 14). Consequently, a large attorneys' fee award is not supported by a successful claim for injunctive relief.

■ It is recognized that the FLSA is an important piece of social legislation. Accordingly, the public derived a benefit from the plaintiffs' recovery on their FLSA claims. *See Fegley v. Higgins, supra*, 19 F.3d at 1132. This public benefit must be taken into consideration in calculating an attorneys' fee. *See Villano v. City of Boynton Beach*, 254 F.3d 1302, 1306 (11th Cir.2001). In this case, however, the monetary value of the public benefit of the plaintiffs' recovery cannot conceivably be worth hundreds of thousands of dollars.

■ In sum, the limited monetary recovery on the FLSA count does not justify an attorneys' fee award of more than one million dollars. Further, other considerations, such as a public benefit, cannot support such an award. The lodestar amount, therefore, should be substantially reduced.

Unfortunately, the principles for determining the amount of reduction in the lodestar have not been articulated with any specificity. Thus, while appellate courts have regularly considered percentage reductions in the lodestar, no case has been cited, or found, which sets forth guidelines for deciding the amount of the percentage that should be employed. The parties seem to agree that a rule of proportionality between a recovery and an attorneys' fee award is inappropriate. *See*

*Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986). Beyond that, however, the plaintiffs simply say that there should be no reduction, and the defendants at the hearing merely urged the court to "lop off" some amount.

In deciding upon an appropriate percentage of reduction, the twelve factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), were considered. For the most part, those factors either had been covered by the lodestar calculation or were not helpful. However, particular attention was given to the factor of awards in similar cases. No FLSA cases were found that involved amounts like those presented here. In *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544 (7th Cir.1999), which concerned much smaller amounts than those in this case, the Seventh Circuit affirmed a fifty percent reduction due to limited success with the result that, after other reductions in the lodestar computation, the attorneys' fee award was only approximately ten percent of the fee requested.

*Spegon* thus suggests that a fifty percent reduction in the lodestar might be appropriate. Such a reduction would still yield an attorneys' fee greater than $533,000. In other words, the attorneys' fee would exceed the recovery by more than one-half million dollars. In my view, an attorneys' fee like that would clearly be beyond the range of reasonableness.

Accordingly, it appeared to me that *Popham v. City of Kennesaw*, 820 F.2d 1570 (11th Cir.1987), provided the more apt guideline. In that civil rights case, the Eleventh Circuit affirmed a sixty-seven percent reduction in the lodestar due to limited success. Other courts have also used that percentage. *See Black v.*

*M.G.A., Inc.*, 51 F.Supp.2d 1315 (M.D.Ala. 1999); *Schofield v. Trustees of the University of Pennsylvania*, 919 F.Supp. 821 (E.D.Pa.1996); *see also Orson, Inc. v. Miramax Film, Corp.*, 14 F.Supp.2d 721 (E.D.Pa.1998) (seventy-five percent reduction). An award of thirty-three percent of the lodestar amount would yield an attorneys' fee of $352,225.40.

That figure still seems high for a recovery of less than $21,000, even considering the public benefit of the recovery. However, the difference between the recovery and the attorneys' fee is comparable to the difference that was present in *Riverside v. Rivera, supra*. There, the Supreme Court approved an attorney's fee of $245,456.25 based upon a recovery of $13,300 on the civil rights claims that authorized an attorney's fee award. Thus, the award in *Riverside* was approximately 18.5 times greater than the fee-shifting recovery while a fee award of thirty-three percent of the lodestar here would be about 16.8 times the fee-shifting recovery. Consequently, in light of these circumstances and *Riverside*, I am not prepared to say that an award of $352,225.40 is excessive.

On the other hand, *Riverside* indicates that a fee based on a reduction of less than sixty-seven percent would be unreasonable. In that case, there was no majority opinion, and the Court's sharp division suggests that the attorneys' fee award was approaching the point at which the fee would become unreasonable.[8] Accordingly, it seems to me that an award of significantly more than thirty-three percent of the lodestar amount would cross the top boundary of reasonableness.

---

**8.** Four justices decided to affirm the award, while four others thought it should be overturned. Justice Powell, the deciding vote, stated that "[o]n its face, the fee award seems unreasonable," but let the award stand because the lower courts' findings and approval did not appear erroneous. 477 U.S. at 581, 106 S.Ct. 2686.

For these reasons, the plaintiffs will be awarded an attorneys' fee in the amount of $352,225.40.

## V.

The plaintiffs also seek $154,116.51 in litigation expenses as part of their attorneys' fee award (Doc. 335). The defendants object to the bulk of these expenditures, asserting that, at most, the plaintiffs are entitled to $5,621.83 (Doc. 341, pp. 26–28).

 Reasonable litigation expenses are ordinarily included in an award of a statutory attorneys' fee. *See Dowdell v. City of Apopka, Fla.*, 698 F.2d 1181, 1190 (11th Cir.1983). This principle applies to the FLSA's attorneys' fee provision. *See Calderon v. Witvoet*, 112 F.3d 275, 276 (7th Cir.1997); *Herold v. Hajoca Corp.*, 864 F.2d 317, 323 (4th Cir.1988), *cert. denied*, 490 U.S. 1107, 109 S.Ct. 3159, 104 L.Ed.2d 1022 (1989); *Certilus v. Peeples*, No. 81–46–Civ–OC–12, 1984 WL 3192, at *2–3 (M.D.Fla. Dec. 4, 1984).

 In this case, plaintiffs' counsel seeks reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, document scanning, and visual equipment (*see* Doc. 339, Exhibits A–O). These types of litigation expenses are recoverable under the FLSA as part of an attorneys' fee award. *See Calderon v. Witvoet, supra*, 112 F.3d at 276; *Colunga v. Young*, 722 F.Supp. 1479, 1488 (W.D.Mich.1989), *aff'd*, 914 F.2d 255 (6th Cir.1990); *Certilus v. Peeples, supra*, 1984 WL 3192 at *2–*3; *see also American Civil Liberties Union of Georgia v. Barnes, supra*, 168 F.3d at 438 (with the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, recoverable under § 1988); *Cappeletti Bros. Inc. v. Broward County*, 754 F.Supp. 197, 198 (S.D.Fla. 1991) (the "nonstatutory costs subsumed within the reasonable attorney's fee could include compensation for postage, long distance calls, photocopying, travel, paralegals, expert witnesses, and computerized legal research").

In support of an award of expenses, plaintiffs' counsel submitted the affidavit of attorney Hardie (Doc. 339). Hardie avers that he has "personally reviewed all the expense records of [Hunton & Williams] relating to this case and matched them against attorney time records in the case to ensure that the expenses were indeed incurred in the course of [their] work on behalf of the Plaintiffs. [He is] certain that the records attached accurately reflect legitimate expenditures by th[e] firm in support of the activities of the attorneys who worked on the case" (*id.* at ¶ 1).

Hardie has also included copies of the expense receipts and records (*see id.* at Exs. A–O). They are categorized into fifteen exhibits (*id.*), the contents of which are described in Hardie's affidavit (*id.* at ¶¶ 2–19). Also attached is a summary of litigation expenses that delineates, by exhibit, the total of the expenditures for which the firm seeks reimbursement (*id.*).[9]

The defendants' primary objection to an award of litigation expenses is a reassertion of their arguments that Hunton & Williams is not entitled to fees incurred before its formal appearance in this case on June 16, 1996, or after October 1, 1996, because the firm purportedly engaged in bad faith negotiations and unreasonably

---

**9.** The defendants do not contest the accuracy of those computations. Therefore, those sums will be assumed to be correct. Consequently, to determine the amount of recovery, listed expenses that are found to be not compensable will simply be subtracted from the totals submitted by Hardie.

refused their Rule 68 settlement offer (Doc. 341, pp. 27–28). Those arguments have previously been rejected as a basis for excluding time that was expended. Similarly, they do not support a reduction in the amount of expenses recovered by the plaintiffs.

Alternatively, the defendants have asserted, in a footnote, that many of the claimed expenses are insufficiently described, excessive, or unjustified (*id.* at p. 28 n. 18). As with an attorneys' fee, expense requests unaccompanied by adequate supporting documentation will result in a reduction or elimination of the expense. *Ramos v. Patrician Equities Corp.*, 1993 WL 58428, at *42 (S.D.N.Y. March 3, 1993).

On the other hand, objections and proof from fee opponents must be specific and reasonably precise. *See American Civil Liberties Union of Georgia v. Barnes, supra*, 168 F.3d at 428. Therefore, absent a specific and cogent objection, only expenses that are patently unreasonable will be rejected.

In this case, the defendants have asserted a blanket objection to the expenses listed in Exhibits D, F, G, H, I, and J (Doc. 341, p. 28 n. 18), contending that they are unjustified and that many appear excessive (*id.*). These expenses include $17,314.27 for internal photocopying; $1,787.33 for long distance telephone calls and facsimile transmissions; $19,802.32 for computer legal research; $536.19 for postage; $5,149.93 for air courier services; and $1,017.08 for ground courier services. Hardie states that these expenses were reasonably incurred in fulfilling the firm's obligation to the plaintiffs and noted, in particular, that extensive photocopying was necessary because the volume of documents in the case was massive (Doc. 339, ¶¶ 4, 13).

These types of expenses are not out of the ordinary for a complex and lengthy civil case. Furthermore, although the amounts requested are substantial, they are not patently unreasonable in these circumstances. Notably, in a case of this magnitude, an accounting for each postage stamp, photocopy, or telephone call is impracticable. *See Northbrook Excess and Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 643 (7th Cir.1991)(requiring description of photocopying costs would make it impossible economically to recover those expenses). Therefore, with the exception of computer legal research, the defendants' vague and general objections do not provide a basis for concluding that these expenditures were excessive or otherwise unreasonably incurred.

However, the plaintiffs' computer legal research records are clearly inadequate. Indeed, the plaintiffs provide no description at all for the computer legal research for which they seek over $19,000 in compensation. *See Hensley v. Eckerhart, supra*, 461 U.S. at 437 n. 12, 103 S.Ct. 1933 (counsel should identify the general subject matter of their expenditures).

Counsel's failure to provide even a brief description of the research warrants rejection of this expense in its entirety under the circumstances. Thus, as previously indicated, counsel was (or should have been) aware at the outset of this case that, if the plaintiffs prevailed, only expenses incurred under the FLSA were recoverable. Undoubtedly, a significant portion of the computer research pertained to distinct AWPA and FLSA issues. Counsel's failure to make any attempt to document the subject matter of the research makes it impossible to determine which expenses are reasonably attributable to, or are inextricably intertwined with, the FLSA claim. It would have been easy enough to make a brief notation of the subject of the legal

research. Therefore, this $19,802.32 claim is rejected.

The defendants, in the footnote, have also asserted objections to particular expenditures. Thus, they argue that paralegal Germino's expenses on July 7, 1997, and September 3, 1996, are duplicative (Doc. 341, p. 28 n. 18; Doc. 339, Ex. L). No explanation has been provided for this contention, and it is thus insufficient. On the other hand, there is merit to the defendants' contention that Germino's hotel charges at a Ft. Myers hotel on September 3, 1996, are unjustified (Doc. 341, p. 28 n. 18). Thus, it is unclear why Germino, who resides approximately 30 miles from Ft. Myers in LaBelle, Florida, stayed at a hotel for two nights in Ft. Myers instead of returning to her home each evening. Because the plaintiffs failed to satisfy their burden of substantiating the reasonableness of this expense, the claim for $125.35 for Germino's hotel lodging in Ft. Myers on September 3 and 4, 1996, will be denied.

The defendants also contend that attorney Hitov's expense receipts for May 16, 1997, reflect an "excessive and duplicative charge" (*see id.*). Hitov's expenses show for May 16, 1997, $650.00 for airfare and $28.40 for parking and a meal (Doc. 339, Ex. N). No explanation is given why these expenses are either excessive or duplicative. Therefore, this objection is overruled.

The defendants also object to expenses characterized as "special services" (Doc. 339, Ex. O). They contend that charges for CD-rom scanning, color exhibits and audiovisual equipment rentals are "unreasonable [and] excessive" (Doc. 341, p. 28 n. 18). However, these vague and conclusory objections are insufficient. *See American Civil Liberties Union of Georgia v. Barnes, supra,* 168 F.3d at 428. On their face, these expenses do not appear unreasonable. *See Colunga v. Young, supra,* 722 F.Supp. at 1488 (recoverable expenses are broadly interpreted under 29 U.S.C. 216(b)). Indeed, color exhibits and audiovisual equipment aids are not unusual for a complex case. Furthermore, the $6,716 expenditure for scanning of documents onto a CD-rom is justified because it enabled the "attorneys and legal assistants to retrieve an image of any document at the touch of a button" and "[t]he ability to do this saved an incalculable amount of attorney time when it came to retrieving documents, analyzing them, and preparing them as witness exhibits" (Doc. 339, ¶ 19). The defendants do not controvert that representation. Moreover, they do not provide a basis for concluding that any of these expenses are unreasonable. Therefore, the objections to the "special services" are rejected.

The defendants also contend that the $20,900 hotel bill accrued during phase one of the trial is excessive (Doc. 339, Ex. A). Thus, they argue that the expenses were "generated by many more people than legal staff reasonably necessary to try Phase I" (Doc. 341, p. 28 n. 18). Specifically, they assert that "[t]he case reasonably could have been tried by no more than 2 attorneys and 1 legal assistant" (*id.*). Consequently, they ask that the bill be cut in half (*id.*). They also assert that the hotel bill should be reduced because it included lodging and meal expenses for several plaintiffs (*id.*).

Hardie states that the hotel bill reflected approximately two weeks of lodging expenses for individual attorneys and legal assistants, a workroom suite that was used as "trial headquarters," and meals (Doc. 339, ¶ 7). He also says that, although witness lodging expenses are included on the hotel receipt, they have been excluded from the expense request (*id.*).

Based on the large number of plaintiffs, the complexity and length of the case, and the voluminous amount of documentation,

it cannot be said that the size of the legal staff was unreasonable. *See American Civil Liberties Union of Georgia v. Barnes, supra,* 168 F.3d at 432 (there is nothing inherently unreasonable about a client having multiple attorneys). Accordingly, reasonable expenses incurred by the legal staff in association with this litigation are compensable.

However, it is unreasonable to charge, without an adequate explanation, lunches for 12–15 people. Furthermore, expenses for snacks, groceries, beverages, and restaurant lunches are unjustified because these are personal expenses that counsel and their legal staff routinely incur at home.[10] Therefore, to the extent that such expenses are discernible from the fee application, they will be excluded. Accordingly, $2,264.25 of expenses associated with phase one of the trial are rejected (*see* Attachment A).[11]

The defendants also object to counsel's airfare and hotel expenses "for travel into and out of Florida" (Doc. 341, p. 27). In this connection, they argue that these expenses are unreasonable because they would not have been incurred if the plaintiffs had selected local counsel to represent them (*id.*). This contention was rejected with respect to the computation of the attorneys' fee, and, similarly, it is rejected here.

With regard to the remaining expenses, which are listed in Exhibits B, C, E, K, and M, the defendants have asserted no specific objection. Therefore, in the absence of a patently unreasonable charge, counsel will be reimbursed for those expenses in their entirety.

Exhibits B and C consist of travel receipts for lodging, airfare, telephone, car rental, meals, and parking. With the exception of certain food and beverage purchases totaling $110.97, and $160.03 (*see* Attachments B, C), the plaintiffs will be reimbursed for those expenses.

Exhibit K contains expenses related to court-ordered mediation and arbitration. The expenditures are adequately identified and appear reasonable. Significantly, as previously indicated, the defendants assert no specific objection to reimbursement of these expenses. Therefore, the plaintiffs will be reimbursed for these charges.

Exhibit E consists of receipts for photocopying by outside vendors (Doc. 339, ¶ 12). Hardie explained that outside vendors were used when it was more efficient in terms of cost and resources to have them perform the work (*id.*). He states that all of these photocopying expenses were reasonably necessary for use in this case (*id.*). Therefore, in light of the absence of any specific objection, the $19,469.56 paid for photocopying by outside vendors will be allowed.

Exhibit M consists of receipts and records of long-distance and facsimile telephone charges incurred by the paralegals residing in Florida. In view of the lack of a specific objection to any of the listed telephone expenses, the plaintiffs will be reimbursed $1,155.47 for these expenses.

In sum, of the $154,116.51 sought for counsel's expenses, unreasonable or unjustified charges in the amount of $22,462.92 are rejected. Accordingly, the plaintiffs will be reimbursed $131,653.59 for expenses associated with this litigation. As delineated by the exhibits to Hardie's

---

**10.** In particular, charges for beer, wine and café lattes at Starbucks reflect an utter lack of billing judgment.

**11.** In case anyone really cares, the food, beverage and miscellaneous items that have been excluded are listed on three attachments to this Order. There is one rejected item of $29.78 for office supplies. As to this item, no explanation was provided why this should not be covered by routine office overhead.

affidavit, compensation will be awarded as follows:

| Exhibit | Amount Sought | Amount Awarded |
|---|---|---|
| A | $28,768.15 | $26,503.90 |
| B | $ 5,139.99 | $ 5,029.02 |
| C | $28,880.47 | $28,720.44 |
| D | $17,314.27 | $17,314.27 |
| E | $19,469.56 | $19,469.56 |
| F | $ 1,787.33 | $ 1,787.33 |
| G | $19,802.32 | $ –0– |
| H | $ 536.19 | $ 536.19 |
| I | $ 5,149.93 | $ 5,149.93 |
| J | $ 1,017.08 | $ 1,017.08 |
| K | $ 5,746.73 | $ 5,746.73 |
| L | $ 8,119.04 | $ 7,993.69 |
| M | $ 1,155.47 | $ 1,155.47 |
| N | $ 2,466.53 | $ 2,466.53 |
| O | $ 8,763.45 | $ 8,763.45 |

VI.

It is, therefore, upon consideration

ORDERED:

1. That the plaintiffs' motion for attorneys' fees (Doc. 335) is hereby GRANTED to the extent that the plaintiffs are hereby AWARDED an attorneys' fee in the amount of $352,225.40 and expenses in the amount of $131,653.59.

2. That the Clerk shall enter judgment in accordance with this Order, and the decisions of March 25, 1999 (Doc. 262), and November 30, 2000 (Doc. 332).

## ATTACHMENT "A"

| DATE | EXPENSE | AMOUNT ELIMINATED |
|---|---|---|
| 5/18/98 | In Room Lunch | $ 147.64 |
| 5/20/98 | In Room Lunch ("Open Food") | 273.84 |
| 5/21/98 | In Room Lunch (15 People) | 273.84 |
| 5/22/98 | In Room Lunch (12 People) | 219.06 |
| 6/1/98 | In Room Lunch | 105.75 |
| 5/26/98 | Romailia Payne "Other Revenue" | 50.17 |
| 5/31/98 | Saltwater Bar–Payne | 32.00 |
| 5/20/98 | Peter "Huntin Williams" Saltwater Bar Lunch | 136.36 |
| 5/21/98 | Peter "Huntin Williams" Saltwater Bar | 9.51 |
| 5/22/98 | Peter "Huntin Williams" Saltwater Bar | 2.92 |
| 5/26/98 | Peter "Huntin Williams" Lunch | 236.07 |
| 5/31/98 | Peter "Huntin Williams" Lunch | 28.77 |
| 5/27/98 | Peter "Huntin Williams" Lunch | 126.50 |
| 5/28/98 | Peter "Huntin Williams" Lunch | 144.78 |
| 5/29/98 | Peter "Huntin Williams" Lunch | 86.53 |
| 5/17/98 | Bryan Katz Saltwaters Bar | 11.07 |
| 6/2/98 | Bryan Katz Chili's Lunch | 25.00 |
| 6/2/98 | Airside F Gifts: Newspapers | 1.33 |
| 5/22/98 | Bryan Katz—Office Supplies | 29.78 |
| 5/24/98 | Bryan Katz Lunch at Subway | 10.12 |
| 5/27/98 | Bryan Katz Groceries including alcoholic beverages | 38.69 |
| 5/21/98 | Mackall—Groceries at Winn Dixie | 38.06 |
| 5/29/98 | Anderson—Subway Lunch | 3.19 |
| 5/24/98 | Anderson—Winn Dixie Groceries | 9.08 |
| 5/17/98 | Mackall Hattricks Alcohol at Restaurant Zinfandal ($3.25); Coors Lite ($2.50); Heineken ($12.00); Port ($5.00) | 22.75 |
| 5/18/98 | Mackall—Groceries | 3.70 |
| 5/23/98 | Mackall—Wine at Shula's Steakhouse, "Francis Cab"—Cabernet Wine (?) | 55.00 |
| 5/24/98 | Mackall—Saltwater Bar—Coffee, snack | 3.20 |
| 5/24/98 | Mackall—Subway Lunch | 3.19 |
| 5/18/98 | Barkus—Nickalouies Uptown (1 glass Cabernet Wine) | 4.25 |
| 5/24/98 | Barkus—Groceries | 54.79 |
| 5/17/98 | Barkus—Groceries | 60.67 |
| No Date | Barkus—Hugo's Restaurant 2 Mich. Draft ($2.00), 2 Ybor Gold ($3.50) | 5.50 |

| | | |
|---|---|---:|
| 5/24/98 | Kichline—Subway Lunch | 3.19 |
| | Kichline—Accaro's Lunch | 7.95 |
| | | $2,264.25 |

## ATTACHMENT "B"

| DATE | EXPENSE | AMOUNT ELIMINATED |
|---|---|---:|
| 2/22/00 | Barkus—Old Style Deli Lunch | $ 77.29 |
| 2/21/00 | Barkus—Showtime Lunch | 14.39 |
| 2/21/01 | Jensen—Groceries | 13.55 |
| 2/21/00 | Jensen—Cinnabon | 2.16 |
| 2/24/00 | Jensen—Starbucks | 3.58 |
| | | $110.97 |

## ATTACHMENT "C"

| DATE | EXPENSE | AMOUNT ELIMINATED |
|---|---|---:|
| 1/7/00 | Mackall—Lunch | $ 10.26 |
| No Date | Mackall—Showtime Lunch | 6.25 |
| 9/1/99 | Barkus—Coffee | 1.21 |
| 9/1/99 | Barkus—Coffee | 2.02 |
| 5/8/98 | Mackall—Lunch & Snacks | 7.55 |
| 5/7/98 | Barkus—In Room Lunch Hyatt | 23.14 |
| 4/18/98 | Mackall—(2) Coronas | 9.00 |
| 4/17/98 | Mackall—Burger King Apple Pie | 1.07 |
| 4/17/98 | Mackall—Burger King Lunch | 9.01 |
| 2/?/98 | Mackall—Groceries | 1.77 |
| 9/6/97 | Mackall—Groceries, including wine | 32.36 |
| 7/11/97 | Barkus—Heineken | 3.55 |
| 6/6/97 | Barkus—Heineken | 3.55 |
| | Barkus—Beer | 3.50 |
| 4/9/97 | Mackall—Groceries | 19.21 |
| 4/10/97 | Mackall—Groceries | 2.49 |
| 4/11/97 | Mackall—Mini Bon | 1.67 |
| 2/12/97 | Mackall—3 Heineken | 8.70 |
| 2/7/97 | Barkus—Coffee | 1.34 |
| 12/16/96 | Barkus—Snacks | 2.26 |
| 12/10/96 | Barkus—Snacks | 1.62 |
| 9/27/96 | Barkus—Beer (2 Bud Drafts) | 8.50 |
| | | $160.03 |